196 So. 141

### ROCHELL v. MOORE–HANDLEY HARDWARE CO.

#### 6 Div. 520.

Court of Appeals of Alabama.

March 19, 1940.

Rehearing Denied April 9, 1940.

W. F. Spencer, of Birmingham, for appellant.

Thompson & Knight, of Birmingham, for appellee.

316

RICE, Judge.

Appellee had judgment against appellant in a suit in assumpsit, based on the common counts.

It appears that appellant entered into a contract with one James Arthur Smith, Jr., whereby James Arthur Smith, Jr., was to build a house for appellant. This agreement contained, among others, the following provisions: "This contractor (James Arthur Smith, Jr.) will furnish no compensation or public liability insurance, neither will he be liable . for Social Security Insurance, State or Federal. This contractor will furnish necessary licenses. It is understood that Mr. Rochelle will receive and pay all bills."

The goods which were the subject matter of this suit were bought of appellee by James Arthur Smith, Jr., for inclusion in the house, above, which he was building for appellant. They were charged on the books of appellee to James Arthur Smith, Jr., individually and alone.

After the delivery of the goods in question, according to appellee's testimony, appellee's salesman was told by appellant that the same should have been charged to him.

James Arthur Smith, Jr., testified: "I discussed both bills (bids) with him (Rochelle) and he said he had always been favorable to Moore-Handley, and on top of that Moore-Handley's was right in line and he told me to give the bid to Moore-Handley, and I gave it to Moore-Handley." Also, that: "I told Mr. Rochelle I was going to buy the goods and he said 'all right,' and I put it in my name, just like I did some other goods on the job. All of those bills have been paid except Moore-Handley's."

Appellee knew that James Arthur Smith, Jr., was building the house in question for Mr. Rochell, but did not know what the terms of the contract between them were.

Appellant testified: "I got Mr. James A. Smith (James Arthur Smith, Jr.,) to build a house (the one hereinabove referred to) for me. The terms of the agreement are (were) that I employed him to build the house for me. I was to receive and pay all bills."

Appellant denied that he authorized James Arthur Smith, Jr., to buy the goods here in question from appellee and further testified: "I never heard of this particular bill here (the one the subject of the suit) or about the order of goods from Moore-Handley until after that house was completed. That is the first I heard about this particular hardware. I did not know where it was being bought from nor did I know in whose name it was being bought."

Appellant's able counsel argues vigorously, here, that upon the facts given in evidence—which we think we have fairly epitomized hereinabove—his client was due to have the jury trying the case given at his request the general affirmative charge to find in his favor. But the learned trial judge took an opposite view; and so do we.

Among other things in his explicit and complete oral charge, the court below told the jury this: "If you find from the evidence in the case that Mr. Smith was the defendant's agent, and that he had the express or implied authority to buy materials, and that the defendant was to pay for such materials and that acting in accordance with that authority he bought goods, or bought material from the plaintiff and used it in this particular house, if you are reasonably satisfied of those facts, then the plaintiff would be entitled to recover. But if you are not reasonably satisfied of those facts, then [the] burden being upon the plaintiff, the plaintiff would not be entitled to recover. * * * Of course, Mr. Smith would have had no authority whatever to buy materials from the plaintiff company to be used on any other job other than the one that the defendant was interested in. You should be reasonably satisfied from the evidence in this case, before the plaintiff would be entitled to recover, that the materials in question alleged to have been sold by the

plaintiff were used in this particular house, or sent out there for use in the particular house that the defendant was interested in."

The above, we think, states the law applicable.

Appellant stoutly contends that because appellee "contracted with and sold to, delivered and charged (the), items of building material (the price of which is here sued for) to James Arthur Smith, Jr., a stranger to this suit; and because credit (for the purchase price of same) was extended solely, exclusively and originally to James Arthur Smith, Jr., and not to the defendant, C. W. Rochelle" (and the undisputed testimony shows that it was, we add), appellee should not be allowed to recover in this case.

But we think the argument of appellant is answered by the language of the text in 2 American Jurisprudence at page 308, Section 393, to-wit: "It is often said that persons dealing in their own names are presumed to deal for themselves as principals, yet if one authorized by another to act as his agent, in acting on behalf of the principal, fails to disclose the principal to the third person, or to disclose that he is acting as agent, the principal, when discovered, may become liable for the acts done in his behalf, and may be sued thereon just as if, at the time the transaction was entered into, the agent had disclosed the fact of his agency and the identity of the principal, unless the principal and the agent have so adjusted their accounts that to hold the principal liable would work an injustice to him."

Another way, it seems, the same applicable law is stated in the same volume of American Jurisprudence at page 308, Section 394, to-wit: "The general rule is that a simple contract made by a duly authorized agent who fails to disclose his principal may be enforced against such principal when the other contracting party discovers the relationship of principal and agent, unless it clearly appears that the contracting party intended to give exclusive credit to the agent, irrespective of the existence or liability

of the undisclosed principal, or unless the contract provides that an undisclosed principal shall not be a party to it."

The above is also the law as announced in 3 C.J.S., Agency, page 170, § 244; also, in The American Law Institute's Restatement of the Law of Agency, Section 126. And see Clealand v. Walker, 11 Ala. 1058, 46 Am.Dec. 238, and Anderson v. Timberlake, 114 Ala. 377, 22 So. 431, 62 Am.St.Rep. 105.

So we have no hesitancy in stating that the law as we have quoted it, above, from 2 American Jurisprudence is, and ought to be, the law of our State.

True, we have stated hereinabove that appellant bases his argument as to his being entitled to have the general affirmative charge in his favor given to the jury upon the asserted fact that credit for the purchase price of the goods, the basis of this suit, was extended "solely, exclusively and originally" to James Arthur Smith, Jr. But that expression, "solely, exclusively and originally," is appellant's.

The evidence falls far short of showing that said "credit" was extended "solely and exclusively" to James Arthur Smith, Jr., in the sense used in 2 American Jurisprudence, p. 308, Section 394, to-wit: "That the contracting party (appellee, here) intended to give exclusive credit to the agent, irrespective of the existence or liability of the undisclosed principal."

As we have said, appellee knew that James Arthur Smith, Jr., was building the house in question for appellant. But that is all it knew. There is nothing to show that it knew of the terms above quoted of the contract between James Arthur Smith, Jr., and appellant; from which terms the jury may have reasonably inferred that James Arthur Smith, Jr., was appellant's agent, duly authorized, in making the purchases in question.

The case was properly submitted to the jury. And the judgment rendered on its verdict is affirmed.

Affirmed.