This is an appeal from a summary judgment for defendants, made final by a determination and entry pursuant to Rule 54 (b) of the Alabama Rules of Civil Procedure. We reverse.
The case arose as a suit for breach of contract. Plaintiff, Frederick Woods entered into a contract to provide architectural services in the development of a condominium project in Sarasota, Florida, with Commercial Properties, Inc. (CPI). The contract was signed by James Folmar on January 2, 1973.
The initial complaint was filed on November 4, 1976, and named as defendants CPI, Folmar, Commercial Contractors, Inc. (CCI) and Airedale Holding Corporation, Inc. (AHCI). Subsequent amended complaints added as defendants Meadow Corporation (MC) and Lido Beach Development Co., Inc. (Lido). According to the affidavits and depositions before the Court, at the time the contract was made MC was the parent corporation for 15-25 wholly-owned subsidiaries including CPI, CCI, AHCI, Lido, Ft. *Page 1078 
Myers South Plaza, Inc. (FMSPI) and others. The stock of MC was held by James Folmar, his wife Mary Folmar and his brother Emory Folmar. James Folmar and Emory Folmar served as directors and officers of all the corporations. CPI was merged into AHCI subsequent to the time of the contract. Since this litigation began the Folmars have sold MC and all their interest therein. Lido was eventually sold to Radix Corporation, a venture in which the Folmars had no interest.
The option to purchase the Florida land for the condominium was taken by FMSPI, which assigned its option to Lido which in turn purchased the land, its purpose being to develop the land.
The general purpose of CPI in this organizational plan was to obtain options to purchase real estate for the purpose of developing the land for commercial use. Then CPI would assign the option to a developing corporation. Defendants Folmar and AHCI admitted that at the time of construction CPI had no financial interest in the project. At the time of the agreement of January 2, 1973, the developing company, Lido, had not been incorporated. The contract was, however, entered into by CPI for the benefit of the entity which would develop the project, i.e., Lido.
CCI was a development corporation operating as a general contractor. It did not participate in development of the Florida condominiums although CCI did the construction of other projects for Folmar.
Although CCI did not participate in the project which is the subject of this litigation, the payment checks the plaintiff received for the part of the contract on which payment was made were from CCI. Also, the defendant Mr. Folmar mailed the contract to the plaintiff with the cover letter bearing CCI letterhead. There were at least two such letters to the plaintiff from CCI.
According to the files of the defendant Mr. Folmar's accountant, Mr. Folmar and his brother Emory Folmar drew their salaries only from CCI and MC. According to the accountant's documents, monies were readily transferred from one corporation to another corporation via the parent corporation, MC. Some of these transfers were in the form of loans.
The plaintiff sued CPI, Folmar, CCI, and AHCI for breach of contract in Mobile County in November, 1976. On motion of the defendants, the case was transferred to Montgomery County in October, 1977. In May, 1978, Folmar and CCI moved for summary judgment asserting that the only party charged in the contract was CPI. The plaintiff opposed this motion on the grounds that there were material issues of fact and amended the complaint to allege that Folmar was the alter ego of CPI, CCI and/or AHCI. The complaint was further amended in October, 1978, to allege that CPI had no direct interest in the building project, that CPI and Lido were mere arms or divisions of MC, and that Folmar and/or CPI were acting as agents for MC with regard to the January 2, 1973, contract. The complaint was amended again in November, 1978, to allege that Folmar and/or CPI acted as agents for Lido with regard to the contract and that they assigned their interest in the contract to Lido with Lido assuming the obligations and liabilities of the contract.
The defendants Folmar, CCI and MC renewed the motion for summary judgment in December, 1978. Extensive discovery followed, and again the complaint was amended to add Lido as a defendant. Ten months after the defendants Folmar, CCI, and MC moved for summary judgment, the trial court granted the motion and entered it as a final judgment. Plaintiff appealed.
The issue presented for our consideration is whether the trial court properly awarded summary judgment for the defendants. Plaintiff asserts on this appeal that sufficient evidence was presented to the trial court supporting its theory or theories of liability to defeat summary judgment.
The standard set out in ARCP 56 (c), is that summary judgment may be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on *Page 1079 
file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must clearly show that the other party could not recover under "any discernible set of circumstances." Chiniche v. Smith,374 So.2d 872 (Ala. 1979); Folmar v. Montgomery Fair Company, Inc.,293 Ala. 686, 309 So.2d 818 (1975). This rule must be considered in the context of the scintilla evidence rule applicable in Alabama. Campbell v. Alabama Power Co., 378 So.2d 718 (Ala. 1979). Furthermore, all reasonable inferences from the facts must be viewed most favorably to the non-moving party. Tolbert v.Gulsby, 333 So.2d 129 (Ala. 1976).
The defendants Folmar and CCI moved for summary judgment on the grounds that they were improperly named as defendants since only CPI was named in the contract. In order to maintain his suit against Folmar and CCI, the plaintiff contended either that Folmar acted without authority in signing the contract or that Folmar and CCI acted with authority on behalf of an undisclosed principal, that principal being MC, Folmar, or CCI. The plaintiff also sought to show that CPI was merely a division of MC and that Folmar was the alter ego of CPI.
If James Folmar acted without authority, he is individually liable on the contract. Copeland v. Swiss Cleaners, 255 Ala. 519,52 So.2d 223 (1951). If Folmar and CCI acted with authority without disclosing the principal, the undisclosed principal is bound by the acts of its agent acting within the scope of his authority. Billingsley v. McRae, 245 Ala. 422, 17 So.2d 286
(1944); Rochell v. Moore-Handley Hardware Co., 29 Ala. App. 315,196 So. 141 (1940).
As stated above, the defendant admitted that the contract was not made for the benefit of CPI, but rather that the contract was entered into by CPI "for the benefit of the entity which would develop the project." That entity was Lido, a corporation which was not in existence at the time of the contract according to the affidavits and depositions before the court. MC was the holder of the stock of both CPI and Lido. Thus whether the contract was made for the benefit of MC as an undisclosed principal is a question of fact within the ambit of ARCP 56 (c). The affidavits and depositions also revealed that CCI was the corporation that paid the amounts under the contract that the plaintiff did receive. Thus it is not unlikely that a jury could conclude that Folmar individually or CCI was the undisclosed principal.
To prove his allegations, the plaintiff sought through the discovery process to pierce the corporate veil of MC, CCI, CPI and AHCI to show that CPI was a division of MC and that Folmar was the alter ego of CPI. It is the law in Alabama and elsewhere that the court will disregard the corporate entity when it is used solely to avoid personal liability of the owner while reserving to the owner the benefits gained through use of the corporate name. Dixie Coal Min. Mfg. Co. v. Williams, 221 Ala. 331,128 So. 799 (1930). It is also true that a "separate corporate existence will not be recognized where a corporation is so organized and controlled and its business conducted in such a manner as to make it a mere instrumentality of another. . . ."Forest Hill Corp. v. Latter Blum, 249 Ala. 23, 28,29 So.2d 298, 302 (1947). More recently this Court held that the theory of separate corporate existence can properly be discarded, even in the absence of fraud, to prevent injustice or inequitable consequences. Cohen v. Williams, 294 Ala. 417, 318 So.2d 279
(1975). Whether Folmar was the alter ego of his numerous corporations is necessarily a question of fact. Forest Hill Corp.v. Latter Blum, supra.
As stated above, James Folmar, his wife and his brother were the sole shareholders of MC. They also served as officers and directors of the numerous subsidiaries of MC. The record indicated that monies readily flowed from one corporation to another via MC. Furthermore, only MC and CCI ever paid the Folmars a salary. *Page 1080 
The affidavits also revealed that the sole purpose of CPI was to obtain options to purchase real estate and then to assign the options at cost to the developing corporation. Hence CPI had no financial interest in the purchases it made. In the case of the land involved in this contract dispute, CPI did not even have an option on the property. That option was taken by FMSPI, Folmar's Florida based corporation. Neither did CPI ever pay any money to the plaintiff; he was paid only by CCI which, according to Folmar's affidavit and deposition, was not involved in the development of this project.
It is our duty to review the material in the same light as the trial court. Folmar v. Montgomery Fair Company, Inc., supra.
Having done so, it is evident that the defendants have not precluded the possibility, as a matter of law, that the plaintiff might establish the issues he has raised. Summary judgment was therefore improper.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, ALMON and EMBRY, JJ., concur.