In these petitions, British Steel Corporation seeks a writ of mandamus, or other appropriate writ, directing respondent, the Honorable John N. Bryan, circuit judge, to dismiss the action against it for lack of in personam jurisdiction. Plaintiffs are the administratrices of their respective decedents, all Alabama residents, who were killed in the collapse of a cofferdam in *Page 410 
Pickens County, South Carolina, on October 6, 1978. Plaintiffs filed their actions for wrongful death on or before October 5, 1979, in the Circuit Court for Jefferson County. Following the denial of its motion to dismiss, British Steel Corporation (BSC) seeks an appropriate writ to compel dismissal.
The dispositive issue on this appeal is whether the trial court properly entertained in personam jurisdiction over BSC. Central to this issue is the question of whether in personam
jurisdiction can be asserted against BSC in the courts of this state in compliance with the Due Process Clause of the 14th Amendment to the United States Constitution. After carefully reviewing the facts and analyzing the issue presented, we conclude that the trial court was correct in allowing inpersonam jurisdiction against BSC, and, therefore, we deny the writ.
The event which gave rise to plaintiffs' actions occurred when the Lake Keowee cofferdam collapsed, killing seven men. The cofferdam, located in South Carolina, was under construction at the time. Four actions are involved in this consolidated case and are the subjects of BSC's petitions. Three of plaintiffs' decedents were employees of Southern Construction and Engineering Company of Birmingham, Alabama. Southern Construction and Engineering Company was the general contractor for the project. The fourth decedent was a truck driver who also was employed by an Alabama employer. BSC, allegedly, manufactured and inspected the steel piling that formed the cofferdam's outer shell. Plaintiffs brought actions against several defendants, including BSC, alleging various theories of liability which we need not examine. BSC was served by certified mail pursuant to Rule 4.2, Alabama Rules of Civil Procedure, which provides the bases and methods of out-of-state service.
BSC's petitions, and the issue they raise, cause us to examine whether the facts in these cases allow in personam
jurisdiction to be asserted against BSC in the courts of this state. The facts, as reflected in the record, overwhelmingly justify the assertion of in personam jurisdiction against BSC. No useful purpose, however, would be served in reviewing all of them. We, therefore, state and review the following facts which are sufficient for an understanding of these petitions.
BSC is a British corporation engaged in the manufacture and sale of steel products, which are sold internationally. Its principal place of business is London, England. BSC is not qualified to do business in Alabama. However, its wholly-owned subsidiary,[1] British Steel Corporation, Inc., is qualified to do business in this state. British Steel Corporation, Inc., (Houston) is a New York corporation with its principal place of business in Houston, Texas. It solicits orders from buyers in the United States for BSC steel products. The record discloses that thousands of tons of BSC steel were shipped into Alabama from 1977 through 1979. The sale of that steel was made through Houston.
Michael Webber was BSC's commercial manager for export sales from 1976-1980. He acknowledged, at deposition, that Houston was formed, and exists, to sell and distribute steel and steel products manufactured by BSC. Webber testified that BSC used Houston specifically for the purpose of selling its products in the United States. According to Webber, the final decision as to whether an order would be filled rested with BSC. Additionally, he testified that the entire administration of Houston reports regularly to British Steel Corporation International. Webber then explained that British Steel Corporation International, Ltd.,[2] reported to BSC. *Page 411 
Webber's deposition also evidences the following facts showing the relationship between BSC and Houston. Webber, an employee of BSC, was "asked to join" the board of directors of Houston, which he did. Eric Walker is the man who asked him. Walker is chairman of the board of Houston. Like Webber, Walker is employed by BSC and is a native of England, where he resides. David Bonham holds the position of sales director with BSC. As in the cases of Walker and Webber, he is on the board of directors of Houston, and is a citizen and resident of England.
Richard Bledsoe is the general manager for distribution with L.B. Foster Company. He testified, at deposition, that L.B. Foster Company is located in Atlanta, Georgia, with a district sales office in Birmingham, Alabama. According to Bledsoe, the BSC steel piling used in the Lake Keowee project was purchased by Southern Construction and Engineering Company through L.B. Foster Company's Birmingham office. Bledsoe explained that the steel was supplied from the company's inventory throughout the United States, with the exception of a small amount contained in a customer's inventory. He testified that the company placed its orders for BSC steel with Houston.
Kenneth Fontaine was an employee of BSC when the Lake Keowee cofferdam collapsed. At deposition he testified that, then, he held the position of "sections metallurgist." Fontaine, who at the time of deposition was retired, testified that during the last few years of his employment with BSC, he was "more involved with investigating customer complaints than with [testing] the quality of steel," which was his previous job. Fontaine made an on-site inspection of the piling at Lake Keowee for BSC after a complaint was received. Apparently, that complaint was made by Southern Construction and Engineering Company and L.B. Foster Company. Fontaine explained that he understood Houston was the American selling agent for BSC.
We note several documents contained in the record which have bearing on the issue presented by these writs. BSC published two pieces of literature entitled "Steel Piling Products" and "Piling Handbook." Both indicated that BSC would provide technical assistance and advice concerning its piling products to customers. Webber's deposition reflects the fact that BSC prepares sales literature for Houston. The minutes of a special meeting of the board of directors of Houston, held on September 21, 1971, reveal that Houston was the collection agent for BSC. By resolution passed at a special meeting of the board of directors on October 10, 1975, T.B. Stone, the president of Houston, was authorized to request additional remuneration from BSC for Houston's services during that fiscal year.
Pursuant to plaintiffs' requests for admissions of fact, the following facts were established. BSC has sent agents into this state to transact business for it. BSC has availed itself of the opportunity of transacting business in Alabama. BSC "systematically and continuously ships goods manufactured by [it] into the State of Alabama and has done so since 1975."
Against the factual background described above, we apply the law pertaining to in personam jurisdiction. Rule 4.2, A.R.C.P., under which BSC was served, "has been found to extend to the permissible limits of due process." Bryant v. CEAT S.p.A.,406 So.2d 376 at 377 (Ala. 1981), cert. denied, 456 U.S. 944,102 S.Ct. 2008, 72 L.Ed.2d 466 (1982) (CEAT); Semo Aviation, Inc.v. Southeastern Airways Corp., 360 So.2d 936 (Ala. 1978); Sellsv. International Harvester Co., 513 F.2d 762 (5th Cir. 1975). The United States Supreme Court has observed that where a defendant conducted business that was "sufficiently substantial" in a forum state, a cause of action unrelated to its activities in the forum could be asserted against it there.Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437,72 S.Ct. 413, 96 L.Ed. 485 (1952). Similarly, in InternationalShoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95
(1945), the court remarked that "continuous corporate operations" within a forum could subject a corporate defendant to in personam *Page 412 
jurisdiction on a cause of action arising outside the forum. In the case of a corporate defendant which maintains a parent-subsidiary relationship with another corporation, it is the rule that the parent's use of the subsidiary in the forum "does not necessarily subject the parent to the jurisdiction [of the forum]. . . ." Cannon Manufacturing Company v. CudahyPacking Company, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634
(1925).
This court recently recognized that
 a forum state may exercise in personam jurisdiction over a nonresident defendant so long as there are such minimum contacts that the suit does not offend "traditional notions of fair play and substantial justice." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490
(1980) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95
(1945)).
CEAT, at 377. Our review of the facts given above leads us to conclude that BSC's activities are substantial and continuous so as to allow in personam jurisdiction to be asserted against it in causes of action which may have arisen outside of Alabama. BSC argues that it is not physically present in Alabama, does not regularly send its employees here, and is not present in this state through the activities of Houston. We find BSC's argument to be at odds with the facts. It is clear that BSC has enjoyed the advantages of doing business in Alabama, and that its products systematically and continuously are shipped here. It is undeniable that Houston is a wholly-owned subsidiary of BSC which was organized, and continues to exist, to serve BSC in the sale and distribution of its steel and steel products. This court has commented that a "separate corporate existence will not be recognized where a corporation is so organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of another. . . ." Forest Hill Corporation v.Latter Blum, 249 Ala. 23 at 28, 29 So.2d 298 at 302 (1947), quoted with approval in Woods v. Commercial Contractors, Inc.,384 So.2d 1076 (Ala. 1980). Under the facts presented in this appeal, BSC has sufficient contacts with this jurisdiction to require it to defend the instant actions here.
 Whether sufficient contacts exist so that the maintenance of a suit in Alabama does not offend reasonableness and fair play is to be determined on a case by case basis. Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485
(1952).
CEAT, at 377.
BSC contends, nevertheless, that under the authority of CEAT,in personam jurisdiction over it cannot be maintained in the courts of this state. In CEAT, this court considered a fact situation where the plaintiff, an Alabama resident, purchased in Priceville, Alabama, a tire, which was made by the defendant. The tire exploded and injured plaintiff at a welding shop in Alabama. In personam jurisdiction was allowed against CEAT, an Italian corporation, even though it had no offices, employees, or property in this country. A Massachusetts corporation, Duddy's, Inc., had a private contract with CEAT and dealt directly with its representatives in Italy. Apparently, Duddy's, Inc., sold tires to David Tire Company in Birmingham, Alabama. Plaintiff purchased the tire that injured him in 1974. This court upheld in personam jurisdiction against CEAT, stating that it was forseeable from CEAT's sales records that its volume of sales in Alabama might subject it to suit in this state.
BSC theorizes that the principal distinction between the instant case and CEAT is that in CEAT, the injury occurred in Alabama. BSC also points to the fact that the sale of the steel pilings was made through L.B. Foster Company, a Georgia wholesale distributor. We are not convinced. In CEAT, this court stated that the exercise of in personam jurisdiction must not offend "reasonableness and fair play" and is "determined on a case by case basis." CEAT, supra. In the instant cases, all decedents were Alabama residents. Plaintiffs also are Alabama residents. The general *Page 413 
contractor for the project was an Alabama business. BSC conducts substantial and continuous business activities in Alabama. In view of all of the foregoing, we find that assertion of in personam jurisdiction against BSC does not offend the requisite elements of "fairness" and "reasonableness" required by the Due Process Clause of the 14th Amendment to the United States Constitution. World-WideVolkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559,62 L.Ed.2d 490 (1980); International Shoe Co. v. Washington,supra.
BSC calls our attention to authorities from various federal courts, which, it argues, support its argument for dismissal. Without concluding that BSC's cited cases would be followed by this court, we find them distinguishable from the fact situation presented by these petitions. BSC cites KramerMotors, Inc. v. British Leyland, LTD., 628 F.2d 1175 (9th Cir. 1980); Betar v. De Havilland Aircraft of Canada, LTD.,80 F.R.D. 400 (N.D.Ill. 1977), reversed on other grounds,603 F.2d 30 (7th Cir. 1979), cert. denied, 444 U.S. 1098,100 S.Ct. 1064, 62 L.Ed.2d 785 (1980); and, Murdock v. Volvo of AmericaCorporation, 403 F. Supp. 55 (N.D.Tex. 1975).[3] These three cases involved situations where a parent corporation was found to be not subject to in personam jurisdiction in the forum state in spite of its subsidiary's activities. In each case, the federal courts found the facts insufficient to establish the subsidiary as the parent's agent or alter ego. It is sufficient to say, without reciting the particulars of each case, that the facts present in this appeal establish a closer parent-subsidiary relationship than in the cases cited by BSC. They are distinguishable in that respect.
BSC also cites Toro Company v. Ballas Liquidating Company,572 F.2d 1267 (8th Cir. 1978) (Toro), for the proposition that it cannot be subject to jurisdiction in Alabama on an alter ego theory when the cause of action arises in another state. We disagree. In Toro, the Eighth Circuit Court of Appeals held that jurisdiction over two defendants did not exist in Minnesota. Plaintiff, Toro, a Minnesota corporation, sued a Texas corporation and its president. Toro alleged, among other things, that the corporation, and other named defendants, were part of a conspiracy that terminated its New York division which sold "Weed Eater" products. Although the defendant corporation conducted business in Minnesota, no jurisdiction was found to exist. The Eighth Circuit noted that there was no relationship between defendants' Minnesota activities and the asserted cause of action. It cited Shaffer v. Heitner,433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), in explaining its reasoning:
 Thus, when the claim sued upon is unrelated to the defendant's forum activities, he may have "no reason to expect to be haled before [the forum state's] court[s]." Shaffer v. Heitner, supra, 433 U.S. 186, 216, 97 S.Ct. at 2586. That is the conclusion we must reach in this case. The record reveals that [defendant's] activities in Minnesota consisted by and large of the occasional visits of [defendant's] regional sales manager to local distributors of Weed Eater products in connection with its agreement with Weed Eater, Inc. It is not without significance that these products were not distributed in Minnesota through Toro's sales divisions. Finally, the district court found that [defendant] "ceased conducting any activity within [Minnesota] one year ago when it terminated its business relationship with Weed Eater." Under these circumstances we hold that it would be so unreasonable as to be unconstitutional to require [defendant] to respond in Minnesota to Toro's complaint on a cause of action arising out of events transpiring in New York and wholly unrelated to [defendant's] activities in the state of Minnesota.
Toro, at 1271.
Shaffer v. Heitner involved an attempt by a non-resident of Delaware to bring a shareholder's derivative action against officers and directors, past and present, of a *Page 414 
corporation and its subsidiary in the courts of that state. The parent was incorporated in Delaware, and the subsidiary in California. Both had their principal place of business in Phoenix, Arizona. The activities which gave rise to plaintiff's cause of action took place in Oregon. Plaintiff attempted to assert in rem jurisdiction over defendants by utilizing a statute which allowed sequestration of property owned by a non-resident defendant. Under Delaware law, the stock of the parent corporation was regarded as being in Delaware and subject to seizure.[4] The United States Supreme Court noted the basis of jurisdiction utilized in the Delaware courts:
 The Delaware courts based their assertion of jurisdiction in this case solely on the statutory presence of appellants' property in Delaware. Yet that property is not the subject matter of this litigation, nor is the underlying cause of action related to the property. Appellants' holdings in Greyhound do not, therefore, provide contacts with Delaware sufficient to support the jurisdiction of that State's courts over appellants. If it exists, that jurisdiction must have some other foundation.
Shaffer v. Heitner, 433 U.S. at 213, 97 S.Ct. at 2584,53 L.Ed.2d at 703 (footnote omitted).
It found no other basis for jurisdiction. The United States Supreme Court concluded that there had been no showing that defendants, by their activities, subjected themselves to jurisdiction in Delaware. It commented further that defendants "have simply had nothing to do with the State of Delaware."Shaffer v. Heitner, 433 U.S. at 216, 97 S.Ct. at 2586,53 L.Ed.2d at 705.
The instant case is not one involving in rem jurisdiction or a fact situation analogous to that in Toro. As recited already, BSC's activities and contacts with Alabama differ markedly from these considered in Shaffer v. Heitner and Toro. A different result, necessarily, must obtain.
A clear legal right, sought to be enforced, is one of the elements required for the granting of a writ of mandamus. Exparte Dorsey Trailers, Inc., 397 So.2d 98 (Ala. 1981); Ex parteSlade, 382 So.2d 1127 (Ala. 1980); Martin v. Loeb Company,349 So.2d 9 (Ala. 1977). BSC cannot show a clear legal right which it seeks to enforce. Accordingly, we deny the writ and affirm the judgment of the trial court.
Finally, we note that in reaching our decision, we have indulged no presumptions of correctness in favor of the judgment of the trial court. No oral evidence was taken by it. Therefore, this Court "sits in judgment on the evidence."Hacker v. Carlisle, 388 So.2d 947 at 950 (Ala. 1980); McCullochv. Roberts, 292 Ala. 451, 296 So.2d 163 (1974); Redwine v.Jackson, 254 Ala. 564, 49 So.2d 115 (1950).
WRIT DENIED.
JONES, ALMON, SHORES and BEATTY, JJ., concur.
TORBERT, C.J., and FAULKNER and EMBRY, JJ., dissent.
[1] British Steel Corporation, Inc., is a wholly-owned subsidiary of British Steel Corporation International, Ltd. British Steel Corporation International, Ltd., in turn, is a wholly-owned subsidiary of BSC.
[2] In his deposition, Webber referred to "British Steel Corporation International." It is clear that the entity referred to is British Steel Corporation International, Ltd.
[3] Betar v. De Havilland Aircraft of Canada, LTD., supra, only involved the issue of lack of effective service on the parent through service on the subsidiary.
[4] "The stock was considered to be in Delaware, and so subject to seizure, by virtue of Del. Code Ann., Tit. 8, § 169 (1975), which makes Delaware the situs of ownership of all stock in Delaware corporations." [Footnote omitted.] Shaffer v. Heitner,433 U.S. at 192, 97 S.Ct. at 2573, 53 L.Ed.2d at 690.