ADAMS, Justice.
This is an appeal by defendant Baldwin County Savings and Loan Association (“BCSL”) from a summary judgment for another defendant in a declaratory action. That summary judgment was in favor of Chancellor Land Company. In the summary judgment, the circuit court declared null and void a note and mortgage executed in the name of Chancellor Land Company, Inc. (“Chancellor”), by L. Winston Biggs (purporting to be Chancellor’s president), for Edgewater West Condominium (“Edge-water”), a joint venture partnership of which Chancellor was a partner. This summary judgment did not adjudicate all of the issues and did not determine the interests of all of the parties, but the trial judge entered a Rule 54(b), A.R.Civ.P., certification of finality. Hence, this appeal by BCSL. We reverse and remand.
The only issue in this limited appeal is whether the trial judge erred in granting summary judgment against Chancellor and in declaring the note and mortgage executed by Chancellor null and void. The facts in this case are complex. We will state only those necessary for a proper determination of the central issue in this case. In August 1981, Chard, Ron Rut-land, and Chancellor formed a general partnership known as Edgewater West Condominium. The partnership agreement provided that none of the partners was to act on behalf of the partnership by executing mortgages or borrowing money without receiving prior written consent from the remaining partners. Notwithstanding this restriction, L. Winston Biggs, representing himself as president of Chancellor, executed a promissory note to BCSL in exchange for $349,969.50. The loan was allegedly made to provide operating funds for Edgewater. BCSL, in turn, took a mortgage on three unsold Edgewater condominium units in Gulf Shores, Alabama. The note was executed on December 20, 1983, and was to be repaid on or before December 20, 1984.
Chard filed this action against Chancellor, L. Winston Biggs, and BCSL on May 9, 1986. In counts one and two, Chard *218 charged that Winston Biggs and Chancellor had breached the partnership agreement by borrowing money without approval of the other partners. In count three, Chard contended that BCSL had negligently failed “to inquire and to ascertain Edgewater West Condominium’s ... and/or Chancellor Land Company, Inc.’s authority to convey said condominium units ... [and had negligently failed] to inquire and review the partnership agreement forming Edgewater West Condominium.” In count four, Chard requested an injunction against BCSL to prevent the foreclosure of the mortgages on the condominium units that had been transferred to alleged good faith purchasers under warranty deeds. Chard asserted that it would be liable under the warranty deed should BCSL be allowed to foreclose.
The trial judge granted a preliminary injunction preventing BCSL’s foreclosure of the condominiums on August 29, 1986. On July 14, 1987, BCSL filed a counterclaim, cross-claim, and third-party complaint against Chard, Chancellor, Winston Biggs, Ron Kirtland, and Edgewater. The owners of the three mortgaged condominiums were later added as parties. Prior to this, on January 20,1987, Chancellor filed a motion for summary judgment and moved that that order be made final pursuant to Rule 54(b), A.R.Civ.P. In its motion, Chancellor argued that it was not liable on the note because Winston Biggs was not the president of Chancellor at the time of the loan.
The affidavits, pleadings, and interrogatories indicate that the loan documents were undisputedly executed by Winston Biggs, acting as president of Chancellor. While the evidence is further undisputed that Biggs was not, in fact, the president of Chancellor at that time, he was perceived by members of Chard to be acting in that capacity. Furthermore, the affidavits offer evidence that Biggs controlled a company called Bileco, which became the sole stockholder of Chancellor in 1981. The affidavit of Winston Biggs further indicates as follows:
“Concerning the note and mortgage as mentioned above, prior to my execution of the same in December, 1983, the directors of Chancellor Land Company, Inc., conducted an informal and impromptu directors’ meeting, with the full consent of all directors, and it was approved that I would execute the note and mortgage as mentioned above on behalf of Chancellor Land Company, Inc. I know of no minutes of this meeting being in existence.
“Prior to my execution of the note and mortgage as above-referenced, I had a working understanding with Ron Kirt-land, and each of the partners of Chard Coast Group, Ltd., as to the fact that I would take out the subject loan on the three condominium units in question in the name of Edgewater West Condominium for the benefit of Chancellor Land Company, Inc. As of December 20,1983, Edgewater West Condominium had paid off its original construction financing with The First National Bank of Birmingham. At that time, Chancellor Land Company, Inc., was more in need of money than the rest of the partners and controlling individuals of Edgewater West Condominium. The idea of this agreement was that Edgewater West Condominium would take out a loan for the use and benefit of Chancellor Land Company, Inc., on the collateral of Chancellor Land Company, Inc.’s, share of the unencumbered condominium units in the Edgewater West project. Ron Kirtland, and each of the partners in Chard Coast Group, Ltd., agreed to this idea. Ron Kirtland and Chard Coast Group, Ltd., did not wish to divide up the unencumbered units in the Edgewater West project as of December, 1983, as this was not good for them for tax purposes. It was understood between myself, acting as agent for Chancellor Land Company, Inc., Ron Kirtland, and Chard Coast Group, Ltd., that I would be allowed to take out the subject loan in the name of Edgewater West Condominium and mortgage the three units in question, representing Chancellor Land Company, Inc.'s, share of the profit in the Edgewater West Condominium to pay off the construction financing on the project, thus *219 leaving the three partners in Edgewater West Condominium the opportunity to split-up the unencumbered units as profits from the project. Ron Kirtland, Charles Chard, Joseph Merkle and James Mahaney were all fully aware of this understanding and agreement prior to December 20, 1983, as I had discussed this with them and had gained their agreement to this arrangement for the benefit of Chancellor Land Company, Inc.”
Chard contends that summary judgment was correct because Winston Biggs did not have written permission from the partners of Edgewater to execute the note. However, Biggs, in his affidavit, supra, states that all the parties involved knew and approved of his actions (although not in writing) prior to the mortgage of the three condominium units. Furthermore, BCSL has offered some evidence to support the argument that Winston Biggs was the alter ego of Chancellor. As stated above, a company known as Bileco was the sole shareholder of Chancellor at the time the loan was made. BCSL, nevertheless, contends that Bileco is controlled by Winston Biggs and is a “Biggs organization.” Whether Biggs, in fact, was the alter ego of Chancellor is a question of fact for the jury. See Woods v. Commercial Contractors, Inc., 384 So.2d 1076 (Ala.1980). Further evidence offered also indicates that the partners in Edgewater considered Biggs to have the authority to act on behalf of Chancellor even if he were not its president.
Section 10-8-49(d), Code of Alabama 1975, states as follows:
No act of a partner in contravention of a restriction on authority shall bind the partnership to persons having knowledge of the restriction.
§ 10-8-49(d), supra. Chard contends that BCSL had knowledge of the partnership agreement and, therefore, of the restriction that no loan could be made that would bmd Edgewater unless made with the written approval of all of the partners. Chard alleges that Samuel McKerrall, who prepared the title guarantee policy, was an agent of BCSL and that his knowledge of the restriction should be imputed to BCSL. BCSL, on the other hand, argues that McKerrall was the agent of the title insurance company and was not the agent of BCSL itself. The appellees admit that questions of agency are normally to be resolved by a jury. Wood v. Shell Oil Co., 495 So.2d 1034 (Ala.1986). We are of the opinion that the affidavit of McKerrall wherein he stated that he was retained by Winston Biggs to provide title insurance on the mortgage of the three condominium units and that he was not retained by BCSL and was not in its employment created at least a scintilla of evidence regarding his acting as agent for BCSL.
Chard finally contends in its brief that the Statute of Frauds mandates an affirmance of the summary judgment granted by the trial court. In response, BCSL, citing Tidmore v. Handy, 277 Ala. 20, 166 So.2d 855 (1964) and Spruiell v. Stanford, 258 Ala. 212, 61 So.2d 758 (1952), argues that the appellee waived the Statute of Frauds by failing to affirmatively plead it either in its answer or in a motion.
BCSL and the appellee offered evidence that the purpose of the loan, although represented to BCSL otherwise, was for the personal benefit of Winston Biggs. However, there is also evidence set out in Biggs’s affidavit, supra, that the partners of Edgewater agreed to this arrangement because they “did not wish to divide up the unencumbered units in the Edgewater West project as of December 1983, as this was not good for them for tax purposes.”
We are of the opinion that, based on the foregoing reasons, at the very least there was a genuine issue of material fact and, therefore, summary judgment in this instance was not proper. Because this case was pending on June 11, 1987, the scintilla rule is still applicable with regard to the summary judgment. § 12-21-12, Code of Alabama (1975). While we do not want to be interpreted in any way as indicating what the final outcome of this dispute should be, we hold that the appellant has offered a scintilla of evidence to defeat the *220 summary judgment in favor of Chancellor Land Company.
REVERSED AND REMANDED.
JONES and STEAGALL, JJ., concur.
TORBERT, C.J., and HOUSTON, J., concur in the result.