This appeal comes to us following a trial on a cross-claim by Craig Construction Company, Inc. ("Craig"), against Bob Hendrix, d/b/a Glass Service Center ("Hendrix"). Josephine Gist was injured in an accident at South Central Bell Telephone Company's office in Florence, Alabama, on November 15, 1985. As she was leaving the premises, Gist ran into a solid glass panel that was part of the entrance door. She sued several defendants, including Craig. Craig cross-claimed against Hendrix, alleging that Hendrix was bound by the terms of an indemnity agreement that was a part of the contract for installation of the glass doors involved in the Gist accident. Eventually, Gist settled all of her claims against the defendants; Craig then pursued its cross-claim in a separate action against Hendrix.
 Stipulated Facts
The suit on Craig's cross-claim was tried pursuant to stipulated facts agreed to by Craig and Hendrix. Those facts were as follows:
 "1. In 1986, Craig Construction Company, Inc., [hereinafter "Craig"] entered into a contract with South Central Bell telephone company [hereinafter "SCB"] to perform certain renovations at the South Central Bell location on Pine Street, Florence, Alabama.
 "2. In furtherance of its contract with SCB, Craig entered into a subcontract with Glass Service Center to perform certain glass and glazing work as specified in the contract between Craig and SCB. A copy of the subcontract is filed herewith as Exhibit A. The contract was a form 'Uniform Subcontract' adopted by the Alabama Branch Associated General Contractors and was provided by Craig.
 "3. The glazing work contemplated by the subcontract involved the removal of a double glass door system and replacement by a single door and a stationary glass panel. On November 11, 1985, the glazing work was performed by Glass Service Center in accordance with the specifications of the contract between Craig Construction Company and South Central Bell. The contract between Craig Construction Company and South Central Bell did not provide for the placement of any bars, logos, window covering or other device or object to be affixed to or near the stationary glass panel. At the conclusion of its work an employee of Glass Service Center placed a tape in a visible manner across the glass which had been installed. No employees of Glass Service Center were thereafter present at the construction site.
 "4. On November 15, 1985, while the construction project continued, Plaintiff Josephine Gist was an invitee on the premises of the South Central Bell location. *Page 754 
As such she entered the payment office through the door which had been installed by Glass Service Center. Upon preparing to leave the premises she ran into the solid glass panel on the left side of the door through which she had entered the office.
 "5. South Central Bell employees who worked in the public office testified as to the presence of the tape on the glass panel during the week before the accident. The tape was apparently removed prior to the accident but there is no evidence as to who removed the tape or when the tape was removed. The testimony of the South Central Bell employees was that the tape was there the day before the accident but they did not know who removed it. Ozella Brewer, who worked for the cleaning service which cleaned the office the evening prior to the accident, testified that the tape was present and that her crew did not remove it.
 "6. Thomas Holden, an employee of Craig, was the job superintendent for the South Central Bell project. He was present and observed the Glass Service Center employees removing the old doors and installing the new system. After the glass panel was installed the employees placed tape across the panel. The tape remained on the panel until the day of the accident. On the day of the accident Thomas Holden was the only employee of Craig on the job site but he did not enter the public office prior to Mrs. Gist's accident. At all times Holden or any employee of Craig was in the public office the tape was present on the glass panel.
 "7. Plaintiff Josephine Gist sustained personal injuries as a result of this accident, to wit, a broken hip, which required a hip replacement. She sustained a permanent partial impairment to her leg of 8%. Medical expenses incurred for the treatment of these injuries were approximately $13,500.00.
 "8. On November 13, 1987, suit was filed against SCB, Craig, Highland Partners Architects, Southeast Service Corporation and Bob Hendrix d/b/a Glass Service Center. After discovery was completed a Motion for Summary Judgment was filed by Craig. The motion was denied by the Court.
 "9. Prior to suit being filed by Gist, Craig put the insurance carrier for Hendrix on notice as to its claim for indemnity. A cross-claim was filed by Craig against Bob Hendrix d/b/a Glass Service Center for indemnity on June 2, 1988. The parties stipulate that the claim for indemnity is amended to include claims for attorney fees and expenses incurred in defense of Craig and for the $12,000.00 settlement which was paid on behalf of Craig to Josephine Gist. Glass Service Center filed a denial to the claim for indemnity and has taken no action to defend or indemnify Craig in the suit by Josephine Gist.
 "10. On October 28, 1988, Glass Service Center was dismissed as a party defendant to the case with Glass Service Center's attorney agreeing to exchange deposition bills with Plaintiff's attorneys which resulted in Plaintiff's receiving consideration of approximately $1,000.00. On November 17, 1988, Plaintiff executed a Pro Tanto Release on behalf of Southeast Service Center for consideration of $7,500.00. Immediately prior to the case being called for trial Plaintiff entered into a settlement with Highland Partners for $25,000.00.
 "11. The claim of Josephine Gist against Craig proceeded to trial during the jury term which began May 22, 1989. After one day of testimony settlement was concluded between Craig and Plaintiff Gist for $12,000.00. . . .
 "12. Craig incurred attorney fees in the amount of $10,699.50 in the defense of the suit by Josephine Gist. Additional expense of $1,142.90 was incurred for the court reporters for the various depositions taken in the case. The parties stipulate that the attorney fees and expenses incurred by Craig were reasonable and necessary.
 "13. The parties stipulate that the Court shall determine based upon the evidence whether the settlement was *Page 755 
prudent, reasonable and made in good faith. The parties stipulate that Michael Turner, an employee of Great American Insurance Company who handled the suit against Craig Construction Company, Inc., would testify that such settlement was reasonable, prudent and made in good faith and that such testimony can be considered by the Court as evidence.
 "14. The parties stipulate that the depositions filed in this cause may be considered by the Court in reaching its resolution of the issues presented herein.
 "15. The parties stipulate that both Craig and Glass Service Center had in force and effect a policy of liability insurance which applied to the damages claimed by Gist. The parties stipulate that although the attorney fees, expenses and settlement which were incurred on behalf of Craig were paid by Great American Insurance Companies that Craig Construction Company, Inc. is properly designated as the cross-claimant for purposes of the claim for indemnity against Bob Hendrix d/b/a Glass Service Center.
 "16. Bob Hendrix claims that the application of the indemnity clause to the facts in this case would be void as against public policy."
 The Indemnity Clause
The subcontract between Craig and Hendrix included an indemnity agreement in favor of Craig. That clause provided as follows:
 "Indemnity Agreement: The Subcontractor covenants to indemnify and save harmless and exonerate the Contractor and the Owner of and from all liability, claims and demands for bodily injury and property damage arising out of the work undertaken by the Subcontractor, its employees, agents or its subcontractors, and arising out of any other operation no matter by whom performed for and on behalf of the Subcontractor, whether or not due in whole or in part to conditions, acts or omissions done or permitted by the Contractor or Owner."
 Trial Court's Holding
The trial court noted that Gist, in her original complaint, had stated two theories of liability against Craig. One claim, the trial court said, was derivative in nature — that Craig was liable for Hendrix's failure to put any marker on the glass panel to make it visible. The second claim was that Craig had its own independent duty to keep the work site safe for invitees, and she alleged that this duty arose from the express language of the contract between Craig and the owner. Based on these findings, the trial court stated:
 "Thus, a number of potential jury decisions existed. First, a jury could have found that the subcontractor was not negligent and had put markings on the glass. The same jury could have found the contractor [Craig] was negligent in its contractual duty in not noticing the markings had been removed during the period after the subcontractor left the job and before the injury occurred. Secondly, a jury may have found the subcontractor had negligently failed to mark the glass and that the contractor [Craig] had negligently failed to notice and rectify it. Thirdly, a jury could have found that the contractor was only liable because of the act of the subcontractor in failing to place markers on the glass.
". . . .
 "Absent a jury's determination as to whether there was a claim which was subject to indemnity, the cross-claimant's action fails for lack of proof. This Court cannot make a decision about which of the three theories caused the contractor to settle the claim. It was undoubtedly a mixture of all three in varying, unquantifiable degrees. Accordingly, judgment is hereby entered on behalf of the cross-claim defendant and against the cross-claimant, Craig Construction Company, Inc."
 Issues on Appeal
Craig contends that the trial court found that it could not enforce the indemnity agreement set out above absent a jury determination of whether there was a claim *Page 756 
subject to indemnification under the contract. Craig argues that the indemnity clause was sufficiently broad to coverany theory of liability under which Craig might suffer a loss. Craig also argues that the indemnity clause was not void as against public policy.
 Holding
Normally, a trial court's judgment is accorded great weight where that court hears evidence ore tenus. Copeland v.Richardson, 551 So.2d 353 (Ala. 1989); Cale v. City ofBessemer, 393 So.2d 959 (Ala. 1980). However, as in this case, when a trial court sits in judgment on facts that are undisputed, an appellate court will determine whether the trial court misapplied the law to those undisputed facts. HomeIndemnity Co. v. Reed Equipment Co., 381 So.2d 45 (Ala. 1980). Furthermore, where the trial court sits without a jury and hears evidence in the form of stipulations, briefs, and writings of the parties, then an appellate court will sit in judgment on the evidence. Hacker v. Carlisle, 388 So.2d 947
(Ala. 1980). See, also, Ex parte British Steel Corp.,426 So.2d 409 (Ala. 1982). In this case, because the trial court decided this case without a jury and based upon written stipulations, this Court sits in judgment on the evidence.
Initially, we must note that the stipulated facts set out above are devoid of any facts that would indicate that the subcontractor, Hendrix, negligently allowed the glass to become unmarked and not visible to persons entering the South Central Bell offices. The parties stipulated, however, that there was no evidence as to who actually removed the marking tape from the glass plate. On that basis, the trial court was justified in holding that there was no indemnifiable occurrence with respect to any negligence on the part of Hendrix.
Second, we note that language very similar to the above-quoted indemnity provision has been construed by this court on a previous occasion. In Brown Mechanical Contractors,Inc. v. Centennial Insurance Co., 431 So.2d 932 (Ala. 1983), this court stated that the clause at issue was not sufficiently precise to warrant a finding that the parties intended that the subcontractor would hold the general contractor harmless for matters that arose out of the general contractor's own negligence; we stated:
 "[I]ndemnification for one's own negligence is available only where 'the parties knowingly, evenhandedly, and for valid consideration intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language.' . . . [Quoting Industrial Tile, Inc. v. Stewart, 388 So.2d 171, 176 (Ala. 1980).]
 ". . . [W]ith respect for indemnification for [general contractor] Goodner's own negligence, the language [of the indemnification agreement] is ambiguous. It refers only to work performed 'by . . ., for and on behalf of the subcontractor.' This language need not encompass Goodner's own independent actions, which included, according to the trial court in a finding not contested on appeal, 'failing to carefully supervise the work of its subcontractor, Brown.' "
Brown Mechanical, 431 So.2d at 945. (Emphasis added in BrownMechanical.)
The language in Brown Mechanical was held not to clearly and unequivocally express an intention that the subcontractor should indemnify the general contractor for injuries that might occur as a result of the general contractor's negligence. At first blush, the rationale of Brown Mechanical would seem to apply in this case. However, the language quoted in BrownMechanical lacks certain critical language that is present here.
The indemnity agreement at issue in this case stated that the subcontractor, Hendrix, would save harmless Craig for incidents that might arise "whether or not due in whole or in part to conditions, acts or omissions done or permitted by the Contractor or Owner." This same language was included within the indemnity agreement that was at issue in the case ofDavis Constructors Engineers, Inc. v. Hartford *Page 757 Accident Indemnity Co., 308 F. Supp. 792 (M.D.Ala. 1968). InDavis Constructors, the court stated:
 "Certainly the words, '* * * and arising out of any other operation no matter by whom performed for and on behalf of the sub-contractor, whether or not due in whole or in part to conditions, acts or omissions done or permitted by the contractor or Owner', satisfy the requirement that the intention to indemnify one for his own negligence be unequivocally expressed.
". . . .
 "The language, '* * * whether or not due in whole or in part to conditions, acts or omissions done or permitted by the contractor or Owner', certainly includes a situation, as the words themselves say, where the Contractor-Indemnitee was negligent."
Davis Constructors, 308 F. Supp. at 795.
Even though the indemnity clause in this case is similar to the one in Davis Constructors, there are no facts contained within the stipulations set out above showing that the acts or omissions giving rise to the claim for damages in this case were done "by [or] for and on behalf of" the subcontractor, Hendrix. The indemnity agreement set out above clearly states that the acts or omissions giving rise to the adverse claim must be done "by [or] for and on behalf of" the subcontractor. When one seeks indemnification from another for damages that were caused by his own negligence, strict construction of the indemnity agreement against the contractor is particularly appropriate. Because no facts stated within the stipulations would lead to a conclusion that Hendrix, or someone acting "by [or] for and on behalf of" Hendrix, negligently removed the tape marker from the plate glass, Craig cannot claim indemnity under the terms of the indemnity agreement.
Based upon the foregoing, we conclude that Craig was not entitled to indemnification under the facts of this case even if the event giving rise to the indemnity claim was caused by Craig's negligence. Although we find it unnecessary to follow the trial court's rationale that a jury finding was prerequisite to any recovery by Craig on the indemnity agreement, we note that the trial court reached the appropriate result in concluding that Craig was not entitled to recovery on this theory. Accordingly, the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
MADDOX, ALMON, SHORES and STEAGALL, JJ., concur.