PER CURIAM.
Cory Mack (“the husband”) appeals from a judgment of the Montgomery Circuit Court divorcing him from Maritza Mack (“the wife”) insofar as it determined that he is estopped by an affidavit he signed on August 24, 2009, from denying his paternity of E.M., a boy to whom the wife had given birth in March 2005. We reverse and remand with instructions.
The material facts are undisputed. The wife did not meet the husband until sometime in 2007, approximately one and one-half years after the birth of E.M., which precludes him from being the biological father of E.M. Moreover, both parties agree that the husband is not the biological father of E.M. At trial, the wife identi- *46 fíed E.M.’s biological father as a man who had raped her and with whom she had not had any contact since the rape. That man’s last known location was a prison in Pennsylvania. The wife had not sought to terminate that man’s parental rights. After meeting in 2007, the husband and the wife began a romantic relationship and began living together. In 2008, they became engaged to marry. On August 24, 2009, the husband and the wife went to the Center for Health Statistics of the Alabama Department of Public Health in Montgomery and told the clerk that they wanted to add..a father to E.M.’s birth certificate. - The clerk gave them a form containing two.affidavits, one of which was to be signed by the wife and the other by the husband. They signed the affidavits before a notary public who notarized their signatures and returned the form containing the two affidavits to the clerk. The affidavit singed by the husband stated:
“I, being first duly sworn, acknowledge that I am the natural father of this child and I understand that execution of this document creates a legal finding of paternity which will affect my legal rights under the laws of Alabama; I understand that any signatory has the right to rescind this affidavit within the earlier of 60 days or the date of an administrative or judicial proceeding relating to the child including a proceeding to establish child support; I understand that after the 60 day period, this document may be challenged in court only on the basis of fraud, duress, or material mistake of fact with the burden of proof upon1 the- challenger, and the legal responsibilities including child support obligations arising from the acknowledgment may not be suspended during the challenge except for good cause-shown; I understand that this affidavit may be used to include my name as the natural father on the child’s birth- certificate; I understand that the document once signed and notarized may be used to obtain an order of financial and medical support and that, absent a court, order to the contrary, I will be legally responsible for providing said support until the child reaches the age of majority, dies, marries, or becomes otherwise em'anei-pated; I understand that I may be responsible for payment of birth expenses; I have received and. read, or have had read to me written materials that explain the rights and responsibilities that signing, this affidavit confers upon me and I understand these rights and responsibilities and voluntarily accept them.”
The husband did not rescind the affidavit within 60 days after he signed it. E.M.’s birth certificate was amended to indicate that the husband is E.M.’s father. The husband and the wife married in April 2011 and separated in August 2012.
In June 2013, the husband sued the wife for a divorce arid sought a determination that he is not the father of E.M. The wife counterclaimed for a divorce and sought a determination that the husband is the father of E.M. by virtue of the affidavit he-signed on August 24, 2009. In response, the husband asserted, among other things, that he is not the father of E.M. by virtue of that affidavit because it does not constitute a valid acknowledgment of paternity pursuant to § 26-17-302, Ala.Code 1975. More specifically, 'the husband argued that the affidavit is not a valid acknowledgment of paternity because, he said, it does not state (1). that E;M. does not have a presumed father or that the husband is E.M/s presumed father, (2) that E.M. does not have another acknowledged or adjudicated father, (3) -that' there either has or has not been genetic testing, and -(4) that, if there has been genetic testing, the husband’s *47 claim of paternity is consistent with the results of that testing.
The parties resolved all issues other than the issue whether the husband is the father of E.M., which was tried at a bench trial. Following the trial, the trial court entered a divorce judgment that, among other things, stated:
“5. That on August 24, 20[0]9 the Husband signed an Affidavit of Paternity with the State of Alabama swearing that he was the natural father of [E.M.]. He did not rescind the affidavit within the time provided by law. • He admitted he was competent to sign, not under the influence of alcohol or drugs, there was no fraud and that he was not operating under a mistake of fact. Since that time he has treated [E.M.] like his son and listed him on military records as his son. The Husband is estopped to deny that [E.M.] is his child,”
The husband filed a postjudgment motion, which the trial court denied. The husband then timely appealed.
“ ‘ “[Wjhen a trial court sits in judgment on facts that are undisputed, an appellate court will determine whether the trial court misapplied the law to those undisputed facts.” ’ Harris v. McKenzie, 703 So.2d 309, 313 (Ala.1997) (quoting Craig Constr. Co., Inc. v. Hendrix, 568 So.2d 752, 756 (Ala.1990)). The ore ten-us ‘standard’s presumption of correctness has no application to a trial court’s conclusions on questions of law.’ Beavers [v. Walker Cnty.], 645 So.2d [1365] at 1372 [ (Ala.1994) ]. ‘[0]n appeal, the ruling on a question of law carries no presumption of correctness, and this Court’s review is de novo.’ Ex parte Graham, 702 So.2d 1215, 1221 (Ala.1997).”
Rogers Found. Repair, Inc. v. Powell, .748 So.2d 869, 871 (Ala.1999).
The husband first argues that the trial court erred in. determining that he is es-topped from denying that he-is the father of E.M. by virtue of the.affidavit he signed on August 24, 2009. Specifically, he argues that that affidavit does not constitute a valid acknowledgment of paternity pursuant to § 26-17-302 because, he says, it does not state: (1) that E.M. does not have a presumed father or that the husband is E.M.’s presumed father, (2) that E.M. does not have another acknowledged or adjudicated father, (3) that there either has or has not been genetic testing, and (4) that, if there has been genetic testing, the husband’s claim of paternity is consistent with the results of that testing. We agree.
In pertinent part, § 26-17-302 provides:
“(a) An acknowledgment of paternity must:
[[Image here]]
“(3) state that the child whose paternity is being acknowledged:
“(A) does not have a presumed father or the man executing the acknowledgment is the presumed fa-. ther; and
“(B)- does not have another acknowledged or adjudicated father;
“(4) state whether there has been genetic testing and, if so, that the acknowledging man’s claim of paternity is consistent with the results of the testing_”
(Emphasis added.) The following principles govern our interpretation of a statute:
“The - fundamental rule of statutory construction is to ascertain and give effect to. the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to inter *48 pret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect. Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa County, 589 So.2d 587 (Ala.1991).”
IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). “Ordinarily ‘must’ is regarded as mandatory in meaning.” Ex parte Stephens, 259 Ala. 361, 363, 66 So.2d 901, 903 (1953). Because the word “must” is ordinarily mandatory in meaning, we conclude that § 26-17-302(a) makes the inclusion of all the information specified in that Code section mandatory in an acknowledgment of paternity and that, because all the information specified for inclusion in such an acknowledgment by that Code section is not included in the affidavit signed by the husband on August 24, 2009, it does not constitute a valid acknowledgment of paternity under that Code section. Therefore, we reverse the judgment of the trial court insofar as it determined that the affidavit the husband signed on August 24, 2009, estops the husband from denying that he is the father of E.M.
However, by holding that the trial court erred in determining that the affidavit the husband signed on August 24, 2009, estops him from denying that he is the father of E.M., we do not hold that the husband is not the legal father of E.M. We note that § 26-17-608, Ala.Code 1975, provides that a trial court may determine that a presumed father is estopped from denying that he is the father of a child and specifies criteria for the trial court to consider in making that determination. We further note that § 26-17-204, Ala.Code 1975, provides, in pertinent part:
“(a) A man is presumed to be the father of a child if:
[[Image here]]
“(4) after the child’s birth, he and the child’s mother have married ,.. and:
[[Image here]]
“(B) with his consent, he is named as the child’s father on the child’s birth certificate....
[[Image here]]
“(5) while the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental relationship with the child by .providing emotional and financial support for the child.... ”
Although the affidavit the husband signed on August 24, 2009, does not constitute a valid acknowledgment of paternity under § 26-17-302 because it fails to include some of the information required by that Code section, it does state that the husband “underst[ood] that this affidavit may be used to include [his] name as the natural father on [E.M.’s] birth certificate .... ” Moreover, it is undisputed that the husband and the wife married after E.M. was born and that E.M.’s birth certificate was amended to name the husband as E.M.’s father on E.M.’s birth certificate after the husband signed the affidavit on August 24, 2009. That evidence raises the issue whether the husband is the presumed father of E.M. under § 26-17-204(a)(4)(B).
In addition, we note that the husband gave the following testimony that raises the issue whether he is the presumed father of E.M. under § 26-17-204(a)(5):
*49 “Q. [By the wife’s counsel:] And from the time that you met [the wife] to the time that you became engaged you had a relationship with [E.M.], didn’t you?
“A. Yes, sir.
“Q. You treated him like he was your son, didn’t you?
“A. Yes, sir.
“Q. You listed him in your military records as your son, didn’t you?
“A. Yes, sir,
[[Image here]]
“BY THE GUARDIAN AD LITEM:
“Q. Mr. Mack, there’s been a lot of talk about money here. Let’s talk about [E.M.]. Tell the Court how you feel about [E.M.].
“A. I feel very strongly. I love him. I look at him as being my son. I do want to take care of him and I want to be in his life.
[[Image here]]
“Q. Let me ask you this question. Whether you are determined to be the father based on the Affidavit of Paternity or you’re not determined to be the father solely based on that, do you still intend and want to have a relationship with [E.M.] whether it’s characterized as one of a father-son or whether it’s characterized as being just like a father? Would you still be in that role with him?
“A. Yes, sir.
“Q. Why?
“A. Because I care about him. I care about him. I’ve been with him since he’s been small. I know all about him. I taught him how to ride a bike. I taught him a lot of things. I was there for him. I mean, I don’t want it to change. It’s just a lot going on right now.
[[Image here]]
“THE COURT: I do have one other question, and I meant to ask it earlier when I was asking about the [military’s Basic Allowance for Housing]. Because the child was listed as your son on the— with the military, did he receive an ID card?
“THE HUSBAND: I believe. I believe he did. But I’m not sure if he has one or not.
“THE COURT: Was he under the TRI-
CARE [insurance]?
“THE HUSBAND: Yes, sir.”
Accordingly, we remand the cause with instructions for the trial court to determine whether the husband is the presumed father of E.M. and, if so, whether he is estopped from denying that he is the father of E.M. based on the criteria specified in § 26-17-608.
REVERSED AND REMANDED WITH INSTRUCTIONS.
All the judges concur.