254 F.2d 78
 Herbert BROWNELL, Jr., Attorney General of the United States, Appellant,
v.
STJEPAN BOZO CARIJA, a/k/a Cariji, Nevenka Olga Kalajdic Carija, Tatjana Mira Carija, Igor Ivan Carija, Appellees.
 No. 13482.
 United States Court of Appeals District of Columbia Circuit.
 Argued October 25, 1957.
 Decided December 5, 1957.
 
 Mr. Harry T. Alexander, Asst. U. S. Atty., with whom Mr. Oliver Gasch, U. S. Atty., and Mr. Lewis Carroll, Asst. U. S. Atty., were on the brief, for appellant.
 Mr. Robert T. Reynolds, Washington, D. C., filed a brief on behalf of appellees, and appellees' case was treated as submitted thereon.
 Before PRETTYMAN, BAZELON and DANAHER, Circuit Judges.
 PRETTYMAN, Circuit Judge.
 
 
 1
 This was a civil action in the District Court for a declaratory judgment. The plaintiffs, husband and wife and their two children, all natives of Yugoslavia, entered the United States on July 30, 1946, on non-immigrant visas for travel to and through the United States. They were originally en route to Paraguay with passports issued by a consular officer of that country. The sixty-day period originally permitted to them for stay in the United States was extended to March 31, 1947. They have continued their stay here; they say, and the Government does not deny, that they have always been available to the authorities. In October, 1947, the Immigration and Naturalization Service instituted deportation proceedings. On June 25, 1948, the Displaced Persons Act was enacted.[1] The plaintiffs immediately made applications for adjustment of their resident status under Section 4 of that Act. That section provided in effect that any alien who entered the United States prior to April 30, 1948 (extended to April 30, 1949, by act of June 16, 1950[2]) and was on that date in the United States, and is otherwise admissible under the immigration laws, and is a displaced person, may apply to the Attorney General for an adjustment of his immigration status; that if the Attorney General determines the alien is qualified under the provisions of the Act he shall so report to Congress and the Congress may by concurrent resolution favor the granting of the status of permanent resident to such alien; and that the Attorney General is authorized to record the admission of the alien for permanent residence. The Attorney General denied an adjustment of status to these plaintiffs. In his answer to the complaint in the District Court he admitted that the denial was "solely upon a finding that their said entries into the United States were unlawful in that they possessed also an intention to remain permanently in the United States at the time of said entries."
 
 
 2
 Pretrial proceedings were had in the District Court. In their pretrial statement, which is in the record before us, plaintiffs alleged that at the time of their entries they had a desire, or purpose, or intent to remain permanently in the United States if permitted to do so lawfully, as well as a desire, or intent, or purpose to continue in transit across the United States to another country. In the pretrial statement plaintiffs also said that upon arrival here they received news that political conditions in Paraguay made it "unsuitable for family domicile." The brief in this court says these conditions "later erupted into a rebellion". The pretrial statement also said that for several months plaintiffs made numerous and diligent, although unsuccessful, efforts to obtain visas for entry into several North and South American countries. Upon oral motion the District Court granted summary judgment for the plaintiffs. That action by the court subsumes that there were no genuine issues of material fact upon the record presented to the court. In its brief here the Government seems to admit that the intention of the plaintiffs was to remain in the United States "if permitted to do so lawfully". The Government argues to us: "The fact that appellees intended to remain permanently in the United States `if permitted to do so lawfully' (R. 2) does not change the complexion of their unlawful entry."
 
 
 3
 Plaintiffs did not, and do not, raise any point concerning the procedure accorded them. The Immigration and Naturalization Service appears to have been meticulous in its regard for fair and thorough hearings and other steps requisite to due process. The case comes to us upon a succinct question of law squarely in controversy between the parties. The question is whether the intent which these plaintiffs entertained in respect to remaining in the United States made their entry upon transit visas unlawful.
 
 
 4
 We take it there is no issue as to the fact that the intention of the Carijas was to remain in the United States permanently, "if they could do so lawfully". It is quite true that, if an alien enters the United States on a temporary permission but with a determination to stay here if possible — meaning by any means possible, — so that his representations to the authorities are false or fraudulent or misrepresentative, he has not lawfully entered this country. The cases so hold,[3] and we agree with that doctrine. The permit upon which such an alien enters, reciting that he is visiting the United States temporarily, or is a seaman entering temporarily solely in the pursuit of his calling as a seaman, is an invalid document in that it was issued upon false information. If the aliens before us had not had a bona fide intent to travel through the United States, as their visas permitted, the case would fall under that doctrine. But we do not have such a case here. These people, so far as this record shows, were in transit in good faith. They were actually en route through this country. In the words of the complaint, admitted by the Attorney General, they possessed "also" the intention about remaining here. That they entertained "a desire or purpose or intent" to take advantage of an opportunity afforded them by the laws of this country to remain here, if such an opportunity should offer itself, does not seem to us to smack of the unlawful or to negative their other basic intent to proceed through the United States as their transit visas required. The problem is the unlawfulness of the entries.
 
 
 5
 This case seems to us to fall within the doctrine of Brownell v. Gutnayer[4] rather than the rule of the cases above cited. In Gutnayer we held that the fact that a duly accredited official of a foreign government entertained an intent to remain in the United States did not make his entry unlawful. So, too, an alien actually and in good faith in transit through the United States does not become an unlawful entrant because he entertains a desire, purpose or intent to remain here if the laws of the country permit him to do so. Such a purpose, so limited, could at best be only a hope.
 
 
 6
 The prayer of the complaint in the case at bar was that the court declare plaintiffs shall not be denied adjustment of their immigration status "upon the theory that intention to remain permanently in the United States made their entries of July 30, 1946 unlawful". That prayer must be construed as referring to the specific intention entertained by these plaintiffs as shown by this record and as we have described it. If it were construed to refer to any intent held by anyone in respect to remaining permanently in the United States, it could not be granted; such a decree would not be in accord with the law. We think the decree should be worded to read that plaintiffs shall not be denied adjustment of immigration status "solely upon the theory that the intention, which these plaintiffs also held, to remain permanently in the United States if permitted to do so lawfully, made their entries of July 30, 1946, unlawful." As thus worded we agree with the judgment of the District Court.
 
 
 7
 Judgment modified and affirmed.
 
 
 
 Notes:
 
 
 [1]
 62 Stat. 1009, as amended, 50 U.S.C.A. App. § 1951 et seq
 
 
 [2]
 64 Stat. 224
 
 
 [3]
 E. g., Sleddens v. Shaughnessy, 2 Cir., 1949, 177 F.2d 363; Del Castillo v. Carr, 9 Cir., 1938, 100 F.2d 338; United States ex rel. Feretic v. Shaughnessy, 2 Cir., 1955, 221 F.2d 262, certiorari denied 1955, 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735
 
 
 [4]
 1954, 94 U.S.App.D.C. 90, 212 F.2d 462