167 So.2d 149

**Claude E. AMBROSE, Jr.,**

v.

**Kathleen VANDEFORD, Executrix.**

**6 Div. 21.**

Supreme Court of Alabama.

Aug. 27, 1964.

Ling & Bains, Bessemer, for appellant.

Huey, Stone & Patton, Bessemer, for appellee.

HARWOOD, Justice.

The appellee, Kathleen Ambrose Vandeford, filed a petition in the Probate Court of Jefferson County (Bessemer Division) seeking the probate of the will of her father, Claude E. Ambrose, deceased.

The appellant, Claude E. Ambrose, Jr., filed a sworn plea in abatement to the petition, the plea asserting that the testator was a resident of Bibb County at the time of his death.

When a testator is a resident of Alabama, his will must be probated in the county of which he was an inhabitant at the time of his death. Section 35, Title 61, Code of Alabama 1940. The word "inhabitant" in the sense of this codal provision is synonymous with "domiciliary." Merrill's Heirs v. Morrissett, 76 Ala. 433.

After a full hearing, at which witnesses testified, and documentary evidence was introduced, the Honorable J. Paul Meeks, Probate Judge of Jefferson County, entered an order overruling the plea in abatement, and finding that the testator was a resident of Jefferson County at the time of his death.

An appeal was taken from this order to the Circuit Court of Jefferson County. The cause was therein submitted on a bill of exceptions, prepared from notes taken at the hearing in the Probate Court.

Thereafter Hon. E. L. Ball, Judge of the Circuit Court of Jefferson County, entered an order affirming the order of the Probate Court. This appeal is from that order.

The sole question presented for review is whether Claude E. Ambrose was a resident (domiciliary) of Jefferson County, or of Bibb County, at the time of his death.

Where an appeal is taken to the Circuit Court from an order, judgment, or decree of the Probate Court under the provisions of Section 775 et seq., Title 7, Code of Alabama 1940, the Circuit Court sits as a court of review. The findings of the Probate Court based on the testimony of witnesses heard ore tenus is presumed to be

correct, and will not be disturbed by this court on appeal unless palpably erroneous. Kelly v. Kelly, 247 Ala. 316, 24 So.2d 265.

The evidence presented in the Probate Court is not in serious conflict. The difficulty is in resolving the question arising from balancing the weight of evidence presented by the appellant, directed toward showing that Mr. Ambrose had acquired a domicil in Bibb County, with that presented by the appellee which tended to show his domicil in Jefferson County, all of which is to be measured in light of the presumption to be accorded the findings of the Probate Court who heard the witnesses ore tenus.

The evidence is not in conflict in showing that Mr. Ambrose was domiciled in Bibb County from 1925 to 1949. He registered to vote in Bibb County in 1925 and paid his poll tax there every year until relieved thereof by age. He and his family lived at a home place in Centreville. This home place consisted of approximately 109 acres. In 1949, he and his wife had marital difficulties and a separation agreement was entered into. Under this agreement Mrs. Ambrose was given the privilege of occupying the home, with one room being reserved therein for Mr. Ambrose. Two months later, in May 1949, Mrs. Ambrose was awarded a decree of divorce and in addition to alimony and child support payments, she was given the right to occupy the residence. A lien was imposed on all the real estate to secure the alimony and support payments decreed.

Thereafter, in 1949, Mr. Ambrose went to Bessemer and acquired a drive-in movie theatre which he operated until he sold it in June 1961. During the time he operated the theatre Mr. Ambrose lived in a small room adjacent to the snack bar of the theatre.

Counsel for appellee contends that the long residence of Mr. Ambrose in Jefferson County, coupled with other evidence to be adverted to later, shows that the domicil of Mr. Ambrose was in Jefferson County, and that this domicil is presumed to continue until a change, facto et animo is shown, and that the appellant has failed to meet his burden of proof, which was upon the appellant, to show a change of his Jefferson County domicil.

The evidence introduced by the appellant shows that Mr. Ambrose continued to occupy his room at the theatre until 9 October 1961. It is the activities of Mr. Ambrose during the period of time from 9 October 1961 until his death on 23 March 1962, in connection with other evidence that we consider critical in resolving the question of Mr. Ambrose's domicil at the time of his death.

Apparently Mr. Ambrose's health had failed when he left his quarters at the theatre. Prior to his time certain of his personal belongings such as a typewriter, adding machine, guns, and boat motor had been taken to the home of his daughter, Mrs. Kathleen Vandeford in Centreville. During the time Mr. Ambrose lived in Bessemer he made frequent trips to Bibb County. The Probate Judge of Bibb County certified that Mr. Ambrose first paid his poll tax in Bibb County in 1925 and continued to pay it until he became over age, and that he remained a qualified voter of Bibb County, Beat 5, until the time of his death. There is evidence tending to show that Mr. Ambrose participated as a voter in some of the elections in Bibb County. At one time he had the Alabama Power Company alter the proposed route of a power line across his property in Bibb County to avoid a place where he intended to build a lake. Mr. and Mrs. Jess Smitherman were friends of Mr. Ambrose during the time he lived in Bessemer. Mrs. Smitherman testified that Mr. Ambrose frequently visited Bibb County and talked of returning there and going into the hog raising business.

From his quarters at the theatre, Mr. Ambrose entered a hospital in Birmingham on 10 October 1961, where he remained until 30 October. He then went to the home of a sister in Birmingham where he stayed until he could complete thirty days of X-ray treatment. After that he went to the home of Mrs. Vandeford in Centreville for several days, and then returned to

his sister's home in Birmingham for two days at Christmas. He then returned to Mrs. Vandeford's home in Centreville where he remained until he again entered a hospital in Birmingham on 19 February 1962. After five days he again returned to his sister's home in Birmingham to be near his doctors. However, on 8 March 1962, he again returned to the hospital where he remained until his death on 23 March 1962.

As noted before, after spending two days at Christmas with his sister in Birmingham, Mr. Ambrose returned to Mrs. Vandeford's home in Centreville where he remained some 52 or 53 days when he again had to be hospitalized. During this time he executed a will.

Mr. J. W. Patton, Jr., the attorney for Mr. Ambrose in the matter, testified that the preparation of the rough draft and the final draft extended over several weeks.

The will executed on 20 February 1962, begins:

"I, Claude E. Ambrose, a resident of the County of Bibb, and State of Alabama, being of sound and disposing memory * * *."

In this will Mr. Ambrose appointed his daughter, Kathleen Vandeford, executrix.

Mr. Patton testified that the will was read to Mr. Ambrose, or Mr. Ambrose read it himself, and made no comment as to the statement describing him as a resident of Bibb County.

Mr. Patton further testified that since Mrs. Vandeford had brought Mr. Ambrose to his office on each of his visits, and a Bibb County address in Centreville was the only one he had in his file, and the only way he had of getting in touch with Mr. Ambrose, he had assumed Mr. Ambrose was living in Bibb County, and he had never discussed the matter with Mr. Ambrose.

The evidence further shows that Mr. Ambrose, at some time during his stay in Centreville rented a mail box there. He instructed the purchaser of the drive-in theatre to send his payments to that address, and he received some mail from Mr. Patton at that address.

■ Mr. C. E. Ambrose, Jr., a son, and one of the beneficiaries under the will, testified that when he visited his father in the hospital in October his father told him he did not intend to live in Bessemer again.

■ This was legal and admissible evidence. In this jurisdiction a proponent or beneficiary of a will may testify as to certain statements made by a deceased testator and such evidence is not considered violative of Section 433, Title 7, Code of Alabama 1940 (Dead Man's Statute), since the estate of the deceased would not be increased or diminished as a result of the suit, only the distribution thereof being involved. Slagle v. Halsey, 245 Ala. 198, 15 So.2d 740, Further, as to the admissibility of oral declarations of the party whose domicil is in question, such declarations are not admissible unless made a part of some act relevant to show domicil and in explanation of it, such as declarations of a party on leaving his home, or arriving at a new abode, or while on a journey. Mitchell v. Kinney, 242 Ala. 196, 5 So.2d 788. Clearly the statement by the decedent while in the hospital in Birmingham in October 1961, was explanatory of his presence in Jefferson County at that time, and shed light on his intent as to domicil.

The appellee introduced into evidence the 1962 motor registration of Claude E. Ambrose dated 20 November 1961, which listed his address as Route 8, Bessemer, an identification card which listed his address as the Bessemer Drive-In Theatre, and Mr. Ambrose's 1962 drivers license dated 25 August 1960, on which his address was shown as 630 North 17th Street, Bessemer, Alabama. It was further shown that the decedent had maintained a bank account in the Exchange Security Bank in Bessemer up to the time of his death and his account address was Route 8, Bessemer, Alabama, and he held a commission as a special po-

liceman for the City of Bessemer for the period 27 February 1959 to 27 February 1960.

Domicil consists of a residence at a particular place accompanied by an intent to remain there permanently, or for an indefinite length of time. A domicil once acquired continues until a new one is acquired. A change of domicil consists of physical presence in the new domicil with the concurrent intent of remaining there for an indefinite time. Mitchell v. Kinney, supra, and the numerous citations therein.

The evidence thus shows that Mr. Ambrose, who without question was domiciled in Bibb County until 1949, left that county and went to Bessemer after marital difficulties. He never changed his voting place, but was listed on the voting rolls of Bibb County until his death. In Bessemer he occupied a small room at the snack bar of the outdoor theatre he operated. He owned land in Bibb County and made frequent trips there, and was interested in the politics of that county. When an apparently catastrophic illness struck him, he left this room at the theatre and entered a hospital. Many of his personal belongings had been taken to Bibb County. So far as shown by the evidence he never returned to this room again. He had sold the theatre the preceding June. While in the hospital he told his son he did not intend to live in Bessemer again.

After medical treatment he went to his daughter's home in Centreville, where he remained for some 53 days, and until again forced to seek further treatment in Birmingham. During this stay in Centreville, he acquired a post office box and had his mail sent there. Also, during this period he executed a will describing himself as a resident of Bibb County. The executrix he nominated in the will was a resident of Bibb County.

In Merrill's Heirs v. Morrissett, 76 Ala. 433, the court states that:

"When a man's domicil is the subject of inquiry, the scale has often been made to turn by a single fact,—as, that he exercised the right of political franchise in a particular State or county * * *."

The court describes such act as a potent consideration.

Declarations of domicil by the deceased are admissible to show intent. Merrill's Heirs v. Morrissett, supra. The declaration by Mr. Ambrose that he did not intend to live in Bessemer again made to his son in October 1961 while he was hospitalized, clearly tends to establish the decedent's intent to abandon his Bessemer domicil.

During the 53 days he spent in Centreville in his daughter's home, he executed a will in which he described himself as a resident of Bibb County. He named his daughter, a resident of Bibb County, as executrix.

Again referring to Merrill's Heirs v. Morrissett, supra, the court writes:

"Recitals of domicil or place of residence, in wills and deeds, are generally regarded as not conclusive, but only *prima facie,* and capable of being rebutted by proof to the contrary.— Whart. Conf. Laws, § 61; Ennis v. Smith, 14 How. (U.S.) 400 [14 L.Ed. 472]. Such recitals are certainly entitled to some weight, in doubtful cases, when made in a will deliberately prepared; and their probative force is increased by the appointment of an executor, for the declared purpose of executing a testator's will, in the same jurisdiction of which he describes himself to be a resident, whether expressly or by clear implication. One who casually dies anywhere, may hastily

prepare his will, even when almost *in articulo mortis*. But persons, especially when exercising great deliberation, are not accustomed to appoint executors, to administer upon their estates in foreign jurisdictions and places distant from their domicils. We deem such appointment, under the circumstances of this case, to be a decisive fact, sufficient in itself to turn the scale. An inference of one's domicil is often drawn from recitals in wills.—Whart. Com. Amer. Law, § 254."

On the other hand, the evidence offered by the appellee consisted largely of certain documents such as deceased's drivers license, car registration receipt, an identification card, etc. These documents listed his address as of the time of the issuance of the document. Such evidence possesses no probative force in tending to show the decedent's domicil during the critical period after he was overwhelmed by a physical illness which proved fatal in a few months. On the other hand, the evidence presented by the appellant does tend, with great force, to show that Mr. Ambrose intended to, and did, establish his domicil in Bibb County, and was a domiciliary of Bibb County at the time of his death.

Giving due accord to the presumptions of correctness of the judgment of the lower court, we are yet of the opinion that the judgment was contrary to the great weight and preponderance of the evidence, and was therefore palpably wrong. For this reason, the judgment is due to be reversed and remanded to the lower court for compliance with Section 64(1), Title 7, Code of Alabama 1940, as to transfer of the probate proceedings to Bibb County.

Reversed and remanded with directions.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.