**EUNICE WILLIAMS, Plaintiff**

v.

**ELI WILLIAMS, Defendant**

Civil No. 280-1970

District Court of the Virgin Islands

Division of St. Croix

June 30, 1971

*See, also, 328 F.Supp. 1380*

LEROY MERCER, ESQ., Christiansted, St. Croix, V.I., *for the plaintiff*

CHRISTIAN, *Chief Judge*

OPINION

Three cases now before the Court raise similar issues and are consolidated for purposes of this opinion.

In Civil No. 280-1970, Division of St. Croix, Eunice Williams, through her counsel the Virgin Islands Community Legal Services, has filed a complaint against her husband seeking a divorce. Defendant husband has failed to make an appearance and the matter is now before the Court on the plaintiff's motion for decree by default. Mrs. Williams is not a citizen of the United States, though

she has lived in St. Croix, Virgin Islands, continuously for nearly ten years. She married her present husband on December 17, 1968, in St. Croix. In 1965, she made application for change of status to that of permanent resident. Her present status, however, remains non-immigrant temporary worker in accordance with the provision of 8 U.S.C. § 1101 (a) (15) (H) (1964).

In Civil No. 304-1970, Division of St. Croix, Vishnu Ramsarran has sued his non-resident wife for divorce. This matter also is before the Court on motion for default judgment. Mr. Ramsarran is not a citizen of the United States. He has lived in the Virgin Islands since June 23, 1968, and has been tentatively approved for permanent resident status. As in the case of Mrs. Williams, his present immigration status is that of a subsection 15 (H) non-immigrant temporary worker.

In Misc. No. 28-1970, Division of St. Thomas, Urania Brown has petitioned the Court for an order granting the adoption of a minor Cheryl Athurton. Miss Brown is not a United States citizen, though she has made her home in St. Thomas since 1965. She has applied for permanent resident status, but at present has the same immigration status as Mr. Ramsarran and Mrs. Williams.

Persons holding this status are colloquially known as "bonded aliens". This appellation, something of a misnomer, derives from the requirement that employers of such persons enter into an agreement with the Government of the United States concerning the temporary worker's employment and stay in the Virgin Islands. The agreement, which subjects the employers to liquidated damages for violations thereof, is known as a "bond". See, Agreement between Employer of Alien Labor and the United States of America, Immigration and Naturalization Service V.I. Form I-320B (10/1/70).

The legal status of "bonded aliens" is established and defined by 8 U.S.C. § 1101(a)(15)(H) (1964) which established the following category of non-immigrants:

(H) an alien having a residence in a foreign country which he has no intention of abandoning (i) who is of distinguished merit and ability and who is coming temporarily to the United States to perform temporary services of an exceptional nature requiring such merit and ability; or (ii) who is coming temporarily to the United States to perform other temporary service or labor, if unemployed persons capable of performing such service or labor cannot be found in this country; or (iii) who is coming temporarily to the United States as an industrial trainee;

■ The question presented by each of these cases is whether a person who enters the Virgin Islands pursuant to this statute can form the requisite intent to establish a domicile in the territory.

Domicile, a concept long familiar to the common law, attained constitutional stature in Williams v. North Carolina, 325 U.S. 226 (1945), where it was said:

Under our system of law, judicial power to grant a divorce— jurisdiction, strictly speaking—is founded on domicile. 325 U.S. 229.

The Constitution makes no mention of this rule and prior to its adoption in Burch v. Burch, 195 F.2d 799, 804 (3rd Cir. 1952), no such rule was enforced in the Virgin Islands. Subsequent to the Burch decision, the jurisdictional provision of the Virgin Islands divorce statute was amended to include a domicile requirement. See, Alton v. Alton, infra, 668–69; Revision Note following 16 V.I.C. § 106. The establishment of the domicile rule as a constitutional prerequisite to jurisdiction is justified as necessary for preserving the power of the states to control the family affairs of their domiciliaries. It was stated in Alton v. Alton, 207 F.2d 667 (3rd Cir. 1953), that "the domiciliary requirement is necessary if our states are really to have control over the domestic relations of their citizens." In Williams v.

North Carolina, supra, the court expressed a concern for the interests of the:

> . . . State which is concerned with the vindication of its own social policy and has no means, certainly no effective means, to protect that interest against the selfish action of those outside its borders . . . . 325 U.S. at 230.

That opinion goes on to say:

> If a finding by the court of one State that domicil in another State has been abandoned were conclusive upon the old domiciliary State, the policy of each State in matters of most intimate concern could be subverted by the policy of every other State. 325 U.S. at 231.

Cf., Granville Smith v. Granville Smith, 349 U.S. 1 (1955), where the court again focused its special interest on the effect which the Virgin Islands divorce law had on state-side residents. The reasoning is not fully applicable to persons who are not citizens of the United States and have never established a domicile there. The solicitude which courts have shown in preserving the power of the states over their domiciliaries would not extend to protect the powers of foreign countries. Respect for the power of foreign countries over their domiciliaries is expressed through the rules of comity and not by way of constitutionally derived jurisdictional requirements. However, the Virgin Islands domicile provision does not distinguish between persons who are domiciled in the United States and those who are domiciled outside of the United States and therefore the domicile requirement must apply to the latter as well as the former.

■ To acquire domicile in a place, a person must be there physically present and have an intent to make that place home. Alton v. Alton, supra, 671. Each of the petitioners satisfies the first branch of the test in that they are present in the Virgin Islands. All three assert that they have formed the intent to make the Virgin Islands their

home. Such an intent appears inconsistent with the conditions under which each was admitted to this country, i.e. "having a residence in a foreign country which he has no intention of leaving." But the appearance of inconsistency is not controlling of these cases.

Even assuming the least favorable situation, where an alien has misrepresented his true intent at the time he was granted entry to the country, the fact that he may be illegally in the country and deportable would not preclude him from forming an actual intent to make his home here. I see no reason to erect from the immigration laws an insuperable barrier of "constructive" intent in divorce litigation that cannot be overcome even by proof of a person's actual intent. The enforcement of immigration laws properly remains with those to whom it is entrusted by law and does not need in aid of enforcement the judicially created civil disability of exclusion from our divorce courts. There is no rational ground for intermingling these two distinct areas of law—immigration and divorce. Moreover, any civil disability that is attached to any class of alien or citizen because of a supposed, but unproven, violation of law demands close scrutiny. Upon examination, I find no justification for the exclusion of aliens from our divorce courts on the basis of a possible technical violation of our labyrinthian immigration laws.

An exclusion of a proper litigant from our divorce courts for a reason unrelated to divorce policy comes under the aegis of the Due Process Clause of the Fourteenth Amendment. See, Boddie v. Connecticut, 401 U.S. 371 (1971). It is axiomatic that aliens come within the definition of "person" in the phrase

nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. Constitution of the United States, 14th Amendment, sentence 2; applicable to the Virgin Islands through Revised Organic Act of 1954, § 3.

See, Takahashi v. Fish & Game Comm., 334 U.S. 410, 422 (1948) (Murphy, J., concurring); Yick Wo v. Hopkins, 118 U.S. 356, 369 (1886); Hosier v. Evans, 314 F.S. 316, 319–20 (D.C.V.I. 1970). To deny an alien access to our divorce courts on the sole ground that he may be in violation of an immigration law would be to deny both due process and the equal protection of the laws. Such a denial would attach a civil disability to some aliens without the prior benefit of the procedures designed for the purpose of enforcing the immigration laws. See, 8 U.S.C. §§ 1251, et seq. (Supp. V 1970); 8 C.F.R. pt. 241–44 (1970). The divorce court is patently an inappropriate forum in which to attempt to reproduce these procedures. An exclusion from court on this ground would also discriminate, without "compelling" reason to do so, against persons who violate this particular immigration law, as distinguished from persons who violate any other law. The remedy for a violation of 8 U.S.C. § 1101(a)(15)(H) is deportation or other administrative sanction, not withdrawal of the right of access to our divorce courts.

I have so far discussed this issue in light of the situation in which a "bonded alien" has misrepresented his intent to the immigration authorities. But there are also several innocent ways by which a "bonded alien" may acquire domicile in the Virgin Islands. First, although subsection 15(H) states quite clearly the condition that an alien admitted to the United States "temporarily" under this provision must have a residence in a foreign country which he had no intention of abandoning, few Western Hemisphere aliens are required to make a statement as to their intent. Seldom do they receive notice of this requirement. Because of the random enforcement of this provision, many "bonded aliens" might arrive in this country from the Western Hemisphere with an intent to stay here in violation of subsection 15(H), without ever having misrepresented or

concealed their intent. Cf., Brownell v. Gutnayer, 212 F.2d 462 (D.C. Cir. 1954), where it was said that the "intention to remain permanently in the United States did not make it unlawful for (a subsection 15(A) alien) to enter the United States 'as a non-immigrant'."

■■ Second, it is conceivable that many persons, knowing of the subsection 15(H) requirement, enter with the dual intent to return to their residence in a foreign country, if compelled, but to remain in the United States if legally permitted to do so. In Brownell v. Stjepan Bozo Carija, 254 F.2d 78 (D.C. Cir. 1957), it was held that a person entering the country with such a dual intent does not violate a provision similar to subsection 15(H) that required an intent not to remain in the United States. Such a dual intent, I think, is consistent with the intent necessary to acquire domicile. A person need not intend to remain in a place unto death to acquire domicile there sufficient to vest a court with divorce jurisdiction. It is only necessary for him to intend to make a home in a place until some reason not incident to the divorce itself makes it desirable, or necessary, to leave. Cf., Restatement of Conflict of Laws, § 20, Comment b, at 40 (1934). A person may acquire domicile though he contemplates staying only for a brief time. The Restatement of Conflict of Laws § 22, illustration 14, at 46–47 (1934) states the following example:

14. A, a married man with a domicil at X, goes to Y, where he obtains work in his trade, takes a house on a short lease, and brings his family and his furniture there. He expects to be employed there about six months. A's domicil may be found to be changed to Y.

A third possibility is that an alien may intend to retain domicile in his home country at the time of his admission to the United States, but thereafter form a contrary intent to make his home in this country. It is not clear whether this change of intent would amount to such a failure "to

251

maintain the non-immigrant status in which he was admitted" as to subject a subsection 15(H) "bonded alien" to deportation. See, 3 U.S.C. § 1251(a)(9) (1964). But whether or not such a change of intent could be a cause of deportation, for the reasons stated above, such an effect would be no reason to bar "bonded aliens" from our divorce courts.

My conclusion that an alien of non-immigrant status is not precluded from obtaining domicile in the Virgin Islands is supported by several well reasoned cases. See, e.g., Alves v. Alves, 262 A.2d 111 (D.C. 1970) (a British subject who held a non-immigrant visa under 8 U.S.C. § 1101(a)(15)(G)(IV), renewable every two years, held not precluded form obtaining domicile in District of Columbia); Gosschalk v. Gosschalk, 48 N.J. Super. 566, 138 A.2d 774 (a subsection 15(B) non-immigrant not precluded from obtaining domicile in New Jersey).

██ In No. 280-1970 and 304-1970, the petitioners having lived in the Virgin Islands nearly ten years and three years respectively and both having formed the intent to make their homes here, I find that Mrs. Williams and Mr. Ramsarran are domiciled in the Virgin Islands. I conclude therefore that the Court has jurisdiction to grant divorces in those two cases.

██ In Misc. No. 28-1970, I find for the same reasons that Miss Brown, being present with the requisite intent, and having made her home in the Virgin Islands for six years, is domiciled here notwithstanding her "bonded alien" immigration status.

The Virgin Islands adoption statute, 16 V.I.C. § 141, permits "(a)ny inhabitant of the Virgin Islands" to petition for an adoption. In the context of a divorce statute, it was held in Burch v. Burch, supra, that the word "inhabitant" means domiciliary. This is a meaning commonly placed on the word by the courts. See, e.g., Bechtel v.

Bechtel, 101 Minn. 511, 112 N.W. 883, 884 (1907) (divorce); Ambrose v. Vandeford, 277 Ala. 66, 167 So.2d 149, 150 (1964). It is possible that the legislature used the term "inhabitant" in the adoption statute in a sense different than that which the court in Burch judicially fastened to the term in the context of the Virgin Islands divorce law. However, since I have found that the petitioner in Misc. No. 28-1970 is domiciled in the Virgin Islands, it is unnecessary at this time to further define those cases, if any, where a petitioner lacking domicile might yet fall within the meaning of the word "inhabitant" as used in § 141.

I conclude therefore that this Court has jurisdiction to decree an adoption in Misc. No. 28-1970.