Bobby Lee Harris appeals from a judgment voiding his election on August 27, 1996, to the office of City Council, Ward 1, of the City of Alabaster. The election contest was filed by Paul Earl McKenzie, who had received the second largest number of votes in the election. The circuit court held that Harris was not eligible to be elected because, it found, he was not a resident of the City of Alabaster and, in particular, of Ward 1. See Ala. Code 1975, §§ 11-43-1 and 11-43-63. The issue is whether the circuit court erred in finding that Harris was a resident of Sylacauga, in Talladega County, rather than of Ward 1 of the City of Alabaster, which is in Shelby County.
The dispute arises because Harris and his wife own a house in Sylacauga that undisputedly was their residence from 1979 until 1987 and that Harris continues to use for some purposes, discussed below. Harris contends, however, and he submitted evidence indicating, that he and his family moved to Alabaster in 1987, with the intention to reside there permanently.
It appears that Harris was the incumbent. His brief states that he was elected to the position in 1992. We do not find that fact in the record, but several items in the record support it. Included in Harris's Exhibit 7 is Harris's "Statement of Economic Interests" filed with the Alabama Ethics Commission in April 1995; that statement shows him to be an assistant school principal in Shelby County and an "Alabaster City Councilman." McKenzie's verified motion for a temporary restraining order includes the statement: "Bobby Lee Harris . . . vacated his office of Councilmember due to the fact that he was not a resident of the City of Alabaster from April 8, 1995" (emphasis added). The April 1995 date derives from Harris's jury service in Talladega County in April 1996, as explained *Page 311 
below, together with the requirement of residence for a year in a county before being eligible for jury service there, Ala. Code 1975, § 12-16-60(a)(1). Harris could have "vacated his office" only if he was a council member in 1995 and 1996, before the August 1996 election disputed here.
The parties stipulated to the introduction of documentary evidence for both sides, which we shall discuss below. They then stipulated as to the testimony that Harris's wife would give:
 "[Mr. Kramer, attorney for McKenzie]: We would also have a stipulation — Mr. Harris, if there is anything different you let me know when I say this — that Brenda Harris would testify that she is the wife of Bobby Harris, that they have been married twenty-five, twenty-six years, that when they moved from the house in Sylacauga she had no intention of moving back, that she has not stayed the night in Sylacauga since they moved, and that she is not a resident of Talladega County. And they moved in 1987.
"The Court: Anything else?
 "Mr. Justice [attorney for Harris]: And they moved to Alabaster, that's where they moved.
 "The Court: Left [in] 1987 and moved to Alabaster then.
"Mr. Justice: Yes, sir."
Mr. Harris then testified. He testified that he registered to vote in Alabaster about 1969 and did not register to vote in Sylacauga during the time he and his family lived there. Registration to vote is a "potent consideration" for a court to take into account when determining one's domicile. Ambrose v.Vandeford, 277 Ala. 66, 70, 167 So.2d 149, 153 (1964). See alsoParr v. Shoemaker, 545 So.2d 37 (Ala. 1989), and Wilkerson v.Lee, 236 Ala. 104, 181 So. 296 (1938). "[V]oting is indicative of intention with respect to the question [of domicile] and is regarded as importantly bearing upon the place of domicile." Exparte Weissinger, 247 Ala. 113, 117, 22 So.2d 510, 514 (1945). Furthermore,
 "Exercising the right of elective franchise, dependent upon citizenship and domicile, is regarded as having weight in settling the question of a person's legal residence. Such act is a deliberate public assertion of the fact of residence and is said to have decided preponderance in a doubtful case upon the place the elector claims as, or believes to be, his residence."
Weissinger, 247 Ala. at 117-18, 22 So.2d at 514. Harris was registered to vote in Alabaster, Ward 1, at the time of the election in question, as we shall show below when we discuss his exhibits.
In 1987, Harris was appointed assistant principal at Thompson High School in Alabaster. When he and his wife moved back to Alabaster at that time, they bought a mobile home that was located on property that he did not, and still does not, own. In 1995, the Harrises replaced the mobile home they had bought in 1987 with another that they bought and placed on the same property. Harris testified that their mobile home is on Dilcy Daniel Drive, off Simmsville Road, in Ward 1 in Alabaster. He testified that he, his wife, and his three sons had lived in a mobile home at this location since buying the mobile home in 1987 and moving into it. His children attended Thompson High School in Alabaster, with the two older sons graduating from there in May 1996, as shown by copies of their diplomas entered as Harris's Exhibit 3.
Harris's attorney asked him "How is [the Sylacauga] property used by your family? What use do you make of it?" Those questions led to the following exchange:
 "A. I use the house myself three nights a week, some Wednesday night[s], Saturday night and Sunday night where I pastor a church in Sylacauga. And I stay there while I am at my church job.
 "Q. How long have you pastored that church in Sylacauga?
"A. For 20 years.
 "Q. So, you were pastoring that church when you lived in that house before you moved to Alabaster?
"A. That's correct.
 "Q. And you continued to pastor that church after you moved to Alabaster?
"A. Yes, sir. . . .
". . . . *Page 312 
 "Q. You say you spend usually three nights a week there?
"A. Sometimes three, sometimes two nights, yes.
"Q. Is that house fully furnished?
"A. It has furniture in it, but not fully.
 "Q. Does anyone accompany you when you go to spend the night there at the house?
"A. No. Never.
 "Q. Do you know whether your wife has been back to the house since the move to Alabaster?
 "A. I think my wife may have been there once or twice since we moved to Alabaster.
 "Q. Have your children been back to that house to your knowledge?
"A. Once or twice.
 "Q. Where do they make their home at the present time?
 "A. Their home is in Alabaster on Dilcy Daniel Drive.
 "Q. This same location that we are talking about —
"A. That's correct.
"Q. — since 1987?
"A. Since 1987."
Harris further testified that because he does not have a street address for mail at his residence in Alabaster, he receives his mail at a post office box in Siluria, Alabama. No discussion of the location of Siluria took place during the trial; from a current map of Alabama, we judicially notice that Siluria is immediately west of Alabaster in Shelby County. Harris testified that he gets very little mail at the Sylacauga address, principally just the utility bills for the house.
The only two items of evidence that might tend to support the circuit court's finding that Harris is a resident of Sylacauga are the fact that the Harrises have continued to claim a homestead exemption for taxation of the house they own there and the fact that Harris served on a jury in Talladega County in April 1996. Harris did not dispute the evidence as to either of these facts. He was asked about the homestead exemption, as follows:
 "Q. Do you know whether or not you claimed a homestead exemption on that property at that time?
 "A. I don't understand — what homestead exemption really means, so I don't even know.
"Q. You don't know whether you did or not?
"A. No, sir."
Both his attorney and McKenzie's attorney asked him about the jury service. To his attorney's question as to how he responded when the Talladega County judge asked the jury venire whether everyone was a resident of Talladega County, Harris responded, "I must have said yes like everyone else." McKenzie introduced as a stipulated exhibit an excerpt from a transcript of the organization of court in Talladega County on April 8, 1996, in which the circuit court told the prospective jurors that they must be residents of Talladega County and instructed them, if they were not, to "come forward at this time." One person came forward and was excused. The transcript then continues:
 "[The Court]: The rest of you are residents of Talladega County? You would be surprised how many people we get from Coosa County, Calhoun County for jury service in Talladega; but you have to be a resident of this county, and you have to be a resident of this county for the past 12 months.
 "(NO FURTHER JURORS ANSWERED UP ON THIS PARTICULAR QUESTION)."
When asked about this by McKenzie's attorney, Harris answered that he remembered someone else going forward to the judge and acknowledged that he did not.
One of McKenzie's exhibits was Harris's response to McKenzie's request for admissions, but the only fact it establishes that is not mentioned above is that Harris has a telephone listing at the house in Sylacauga. Harris's Exhibit 2[1] is a copy of a page from the "Greater Birmingham Residence" telephone book showing a listing for "Rev. Bobby *Page 313 
Harris" on Simmsville Road in Alabaster. Harris's Exhibit 1 is the "Voter List by Name" for "District 001" of the City of Alabaster, showing a date of Friday, August 23, 1996, including "Harris, Bobby Lee" and "Harris, Brenda McKin — [cut off by the data format]."[2] Harris introduced exhibits showing his use of the Siluria post office box as his address; those exhibits included his motor vehicle registration and even the summons to jury duty in Talladega County. He introduced a portion of his and his wife's 1987 federal income tax return, showing the Sylacauga address; their 1988 tax return, showing a post office address in Alabaster; and their 1992 tax return, showing the Siluria post office box. Harris's exhibits 4 and 6 are insurance and credit applications; they show that he used the Siluria post office box. His driver's license and his pistol license also use that address. This is essentially all of the evidence, although there is some other cumulative evidence favorable to Harris.
The circuit court stated in its judgment that "the parties agree that residence for election purposes under" the relevant Code sections "means domicile," and cited Osborn v. O'Barr,401 So.2d 773 (Ala. 1981). We agree that this is a correct proposition of law. See, e.g., Parr v. Shoemaker, 545 So.2d 37
(Ala. 1989); Rouse v. Wiley, 440 So.2d 1023 (Ala. 1983); Mitchellv. Kinney, 242 Ala. 196, 5 So.2d 788 (1942).
"[W]hen a trial court sits in judgment on facts that are undisputed, an appellate court will determine whether the trial court misapplied the law to those undisputed facts." CraigConstr. Co. v. Hendrix, 568 So.2d 752, 756 (Ala. 1990) (citation omitted).
 "A person's domicile is that place in which his habitation is fixed, without any present intention of removing, and it embraces (1) the fact of residence and (2) the intention to remain. As a general proposition, a person can have but one domicile, [which] once acquired is presumed to continue until a new one is gained facto et animo, and what state of facts constitutes a change of domicile is a mixed question of law and fact."
Ex parte Weissinger, 247 Ala. 113, 117, 22 So.2d 510, 514
(1945).
There are only four items of evidence having any tendency at all to support a conclusion that Harris is a resident of Sylacauga: (1) the fact that he and his wife own a house there; (2) the fact that there is a telephone listing in his name at the Sylacauga address; (3) the fact that he failed to report a change of residence to the taxing authorities of Talladega County in regard to his homestead exemption; and (4) the fact that he failed to tell a Talladega County circuit judge on April 8, 1996, that he was not a resident of Talladega County.[3] The first two items are nondispositive and are clearly overcome by the overwhelming evidence of his fixed habitation in Alabaster, where he and his family live and where he works and is involved in the community. Similarly, his two failures listed as items (3) and (4) do not overcome the otherwise uncontradicted evidence that he is, and has been at all times pertinent to this action, a resident of Ward 1 in Alabaster for purposes of his eligibility for election as a city council member for that ward. All of the facts are undisputed, except perhaps Harris's intention in regard to his place of habitation, and the overwhelming weight of the evidence is that it is his intention to be a resident of Alabaster. The circuit court erred in concluding that Harris's residence for purposes of §§ 11-43-1 and 11-43-63 is in Sylacauga rather than in Ward 1 of Alabaster.
REVERSED AND REMANDED.
MADDOX, SHORES, HOUSTON, KENNEDY, COOK, BUTTS, and SEE, JJ., concur.
HOOPER, C.J., dissents. *Page 314 
[1] All of the exhibits were admitted by stipulation.
[2] Both of these names show an address of "102 4TH PL NE" in Siluria. There was evidence that the Harris residence is at the intersection of Dilcy Daniel Drive and 4th Place N.E.
[3] We draw no conclusion as to any effect these failures may have in regard to his jury service, the taxation of his property, or otherwise.