WISE, Justice
(dissenting).
I respectfully dissent from the holding in the main opinion regarding the domicile of students for purposes of registering to vote in the places where those students attend school. I believe the reasoning in the main opinion would place an unnecessary burden on students who wish to vote and could potentially have a chilling effect on future voter participation.
In Ex parte Phillips, 275 Ala. 80, 152 So.2d 144 (1963), this Court stated:
“Since every person must have a domicile, the law assigns to persons incapable of acquiring a domicile through choice, a domicile by operation of law. This first domicile so assigned is the domicile of origin. Beale, Conflict of Laws, Vol. 1, page 210. The place of the birth of a person is considered as his domicile of origin, if at the time of his birth it is the domicile of his parents. Daniel v. Hill, 52 Ala. 430 [ (1875) ]. A domicile of origin, as in the case of domicile of choice, when once established is continuing until another domicile is acquired. Daniel v. Hill, supra; Merrill’s Heirs v. Morrissett, 76 Ala. 433 [ (1884) ]; Ex parte Bullen, 236 Ala. 56, 181 So. 498 *964 [ (1938) ]; Ex parte State ex rel. Altman; 237 Ala. 642,188 So. 685 [ (1939) ].
[[Image here]]
“In .order to acquire a domicile of choice there must be both an abandonment of the- former. domicile- with no present intention of return, and the establishment of another place of residence with the intention to remain permanently, or at least'for an unlimited time; and the intent to remain permanently may be inferred from the intent to remain for an .unlimited time. Holmes v. Holmes, 212 Ala. 597, 103 So. 884 ([1925) ]; Merrill’s Heirs v. Morrissett, supra; Allgood v. Williams, 92 Ala. 551, 8 So. 722 [ (1891) ].
“It is also well settled by our decisions that a domicile once acquired continues until a - new' domicile is effectuated. Holmes v. Holmes, supra; Pope v, Howle, 227 Ala. 154, 149 So. 222 [ (1933) ]; Glover v. Glover, 18 Ala. 367 [ (1850) ]; Mitchell v. Kinney; 242 Ala. 196, 5 So.2d 788 [ (1942) ].” ■
275 Ala. at 82-83, 152 So.2d at 146-47 (emphasis added). Also, in Wilkerson v. Lee, 236 Ala. 104, 106-07, 181 So. 296, 298 (1938), this Court stated:
“A voter having acquired a legal residence, been duly registered as a voter of the county and precinct or ward, ... may retain such residence until he has abandoned and removed therefrom with the intent to become a resident elsewhere. Temporary absence from one’s residence for the purposes of his employment and the like, without the intent to abandon the home town and acquire a domicile elsewhere permanently, or for an indefinite time, does not forfeit his right to vote. Pope v. Howle, 227 Ala. 154, 149 So. 222 [ (1933) ]; Caheen v. Caheen, 233 Ala. 494, 172 So. 618 [ (1937) ]; 8 Alabama Digest, Elections, 264.”
(Emphasis added.) Thus, when determining whether a student attending school away from his or-her hometown has acquired a new domicile for voting purposes, this Court must look at whether the person (a) had an intent to abandon,his or her hometown and (b) intended to acquire a domicile elsewhere permanently or for an indefinite time. . However, the main opinion goes further and imposes a requirement applicable only to students — that the students- have definite plans to reside in the city in which they are attending school after they graduate, This appears to go further than our previous caselaw regarding the establishment of a new domicile.
■In this case, most' of those students whose votes are challenged and who are addressed in Part I of the main opinion indicated that they intended to -remain in Tuscaloosa indefinitely; all but a handful of those students indicated that they did not have definite plans after graduation. Additionally, nothing in the affidavits submitted by those- students indicated that they - had any intent to return to their parents’ home after they graduated. Rather, most indicated that they had no clear intent to return to their parents’ home after graduation. Thus, this was not a situation where the evidence supported a finding that the students were temporarily absent from-their parents’home with an intent to return after they completed their schooling. This fact, coupled with the students’ stated intention of remaining' in Tuscaloosa indefinitely and with the fact that these students took the affirmative action of registering to vote in .Tuscaloosa, seems to satisfy the requirements of Wilkerson for establishing a change in domicile for voting purposes.
Note 7 of the main opinion reads:
“In Harris v. McKenzie, 703 So.2d 309, 311 (Ala.1997), this Court found ‘[registration to vote [to be] a “potent *965 consideration” for a court to take into account when determining one’s domicile.' (Quoting Ambrose v. Vandeford, 277 Ala. 66, 70, 167 So.2d 149, 163 (1964).)”
197 So.3d at 953 n. 7. After noting that Harris relied on Ambrose v. Vandeford, 277 Ala. 66, 70, 167 So.2d 149, 153. (1964), which involved a challenge to venue, the main opinion goes on to state:
“In contrast, where the propriety of a resident’s registering to vote is itself the issue, it obviously makes little sense to consider as particularly ‘potent’ that very act of registration.”
197 So.3d at' 954, n. 7. However, when determining whether a student has decided to change his or her domicile for voting purposes, what can be more demonstrative' of the student’s intent than the act of registering to vote in the city and county of his or her new domicile? By registering to vote in the city and county in which the student is attending school, the student is relinquishing the right to vote in his or her previous domicile, i.e., his or her hometown. The student is also expressing a desire to become involved in the political process of the city, county, and state in which the student is actually living and where the student spends the majority of his or her time, rather than' in the community in which the student’s parents live or in a political community with which the student may maintain little to no contact.[19] Moreover, these students'play an important role in the financial, social, and religious fabric of the community where they attend school. College students certainly contribute to the financial base of the area; they frequent area retail shops, service stations, grocery stores, and restaurants, just to name a few of the places college students spend money. Many students rent apartments and obtain employment while attending' school. 'Students attend churches and synagogues, become involved in charitable work, and volunteer in political campaigns within these communities. Because thése students have such a Significant impact on the. community in which they live and attend school, they should rightly enjoy all the privileges other citizens in that community enjoy. To deny these student citizens the right to vote in the community of their chosen domicile, i.e., where they live and attend school, is, in my opinion, nonsensical.
The main opinion also focuses on various other factors in determining whether the students were domiciled in Tuscaloosa for purposes of registering to vote. Specifically, it looks at such factors as whether the students have previously registered- to vote and/or voted elsewhere; the addresses, listed on the students’ driver’s licenses and the-, dates those licenses were renewed; the county and state where the automobiles the students “own or drive” are registered; the addresses listed on the students’ federal and state income-tax returns;- the addresses to which their school registration information is sent; - the addresses ■ to which. their grades are sent; and the location of the banks with which they have checking or savings accounts. I *966 do not believe that this Court should focus on these factors, which, at times, shed very little light on the students’ actual intent regarding their domicile. Although the factors evaluated in the main opinion might be relevant in determining whether the students in question intended to change their domicile at some time before they actually registered to vote, these factors should not be determinative of whether students even have a right to register to vote in the city in which they.attend school. Rather, I believe that the main opinion’s reliance on these factors ignores the reality of student life today.
College students leave home to attend school when they are young and have little life experience. Some students may initially plan to return home after they complete their education. However, as they adjust to life at school, become part of the community in which their school is located, and mature, those plans frequently change. Thus,' plans change and the students change, and they no longer intend to return to their hometown after they leave school. Other students leave them parents’ homes to attend school with no intention of ever returning to their parents’ homes after they complete school. These two groups of students may decide to remain in the places where they attend school indefinitely and may plan to try to seek employment or to attend graduate school there. These students might not have any definite postgraduation plans because they do not know where- they will actually find employment after graduation; they do not know if they will attend graduate school or where they will be accepted if they do; and they do not know what opportunities will be available to them when they graduate. If a student does not intend to return to his or her parents’ home and decides to remain indefinitely in the city in which the student attends school, why should that student be considered domiciled in his or her hometown and required to vote absentee merely because the student has not formulated definite plans after graduation?
Additionally, the main opinion looks at the fact that some of the students in this category had previously registered and/or voted elsewhere to indicate that those students did not intend to change their domicile. This category included some students who had registered to vote before they ever became students at the University of Alabama; some students who registered to vote after they became students at the University of Alabama; and others who provided information that was not clear as to whether they had registered to vote before or after they became'students at the University of Alabama. Of those who had previously registered to vote elsewhere, some never voted in those other locations; some voted in the other location before they became students at the University of Alabama, while others voted after they became students at the University of Alabama. Some of those students indicated that they had voted by absentee ballot. However, the fact that students had previously registered and/or voted elsewhere but then changed their voter registration to Tuscaloosa County is, in my opinion, equally suggestive that it was the intention of those students to change their domicile.
The main opinion also focuses on the addresses the students had listed on income-tax returns, had provided to the University of Alabama for registration purposes, and to which they had their grades sent. Although some students remain in the city in which they attend school year round, many students are temporarily absent during holidays, school breaks, and the summer. Although some students return to their parents’ home for the summer, others travel or visit with friends and *967 other relatives. Other students temporarily live in other locations while they work or complete internships. Some students participate in study-abroad programs during the summer. Thus, for practical purposes, many students might use their parents’ address for important matters such as tax returns, school registration, and semester grades. Also, with regard to grades and school-registration materials, many of the students whose votes are being challenged indicated that their grades and/or registration materials were sent not by conventional mail, but to e-mail addresses or were obtained online, and they did not provide any address to which that information had been mailed.[20] Further, some students have their grades and registration information sent to their parents because their parents provide financial support:[21]
The main opinion also looks to the location of the banks at which the students had checking or savings accounts. Initially, I note that, in Ex parte Coley, 942 So.2d 349 (Ala.2006), when determining whether Co- • ley had established that she had changed her domicile for venue purposes, this Court looked at the fact that Coley’s bank accounts listed her home address as being in the county in which her parents resided. However, the affidavits in this case do not elicit any specific information regarding the addresses listed on the students’ bank accounts. Rather, the affidavits included the following language:
“I have a checking or saving account with_located in_” '
Moreover, many of the students indicated that the banks at which they did business were located in Tuscaloosa. Others indicated that their banks were located in other cities. However, relying on the location of the banks at which the students did business to determine their intent to maintain a domicile ignores three separate considerations. First, some students open bank accounts before they leave for school and do not change their established bank accounts once they are living in the city where they attend school. In fact, one student indicated on her affidavit that her father had opened the account in another town but that she used the local branch of that bank in Tuscaloosa. Second,heavy reliance on the location of the bank also ignores the reality of banking today. Even if a student’s home bank might, technically be located in the city or town where he or she lived before starting school, many, banks have branches throughout the state and the country. Also, eyen if the bank did not have-a branch in Tuscaloosa, with the advent of electronic banking, debit cards, and automatic-teller machines, people can access their funds, deposit checks, make transfers, open accounts, apply for loans, and handle other banking *968 needs without ever going to a physical bank building. Thus, a student may not transfer an account to another bank located in the town where the student is attending school, even though he-or she intends to change his or her domicile. Finally, for some students who are receiving financial support from their parents, having an account in the town or city in which their parents live might make .it more convenient for their parents to deposit money into, their accounts.
The main opinion also looks at the state and county in which the automobiles the students owned or drove were registered. However, this factor should not weigh heavily in a determination as to a student’s domicile. The affidavits asked about the automobile that the student “own[s] or drivefs],” but never asked about who actually owned the automobile. If the student does not actually own the automobile the student is- driving, how can where that automobile is registered shed any light on whether the student is actually domiciled in Tuscaloosa or elsewhere? Thus, the affidavits do not provide this Court with enough information regarding the registration of the automobiles to use in determining whether the students were domiciled in Tuscaloosa for voting purposes.
Finally, the main opinion looks at the states where the students’ driver’s licenses were issued,' the addresses listed on those driver’s licenses, and the dates the licenses were renewed. Many of those students who had licenses issued by other states or Alabama licenses that listed an address for somewhere other than Tuscaloosa had been renewed in 2012 or before. For those students, this information does not shed any light on ■ their intent regarding domicile at the time they registered to vote. With regard to those students who renewed their licenses in 2013, that information could be relevant in determining whether those students intended to change their domicile before they actually registered to vote in Tuscaloosa. However, it should not be used -in determining whether students who were living in Tuscaloosa and who subsequently took the affirmative action of registering to vote in Tuscaloosa were actually domiciled there for purposes registering to vote.
Moreover, I believe that the 'holding in the main opinion regarding the domicile of a student is contrary to legislative intent.
Section 17-11-3, Ala.Code 1975, provides, in pertinent part:
“(a) Any qualified elector of this state may apply for and vote an absentee ballot by mail or by hand delivery, as provided in Sections 17-11-5 and 17-11-9, [Ala. Code 1975,] in any primary, general, special, or municipal election, if he or she makes application in writing therefor not less than five days prior to the election in which he or she desires to vote and meets one of the following requirements:
[[Image here]]
“(4) The person is enrolled ás a student at an educational institution located outside the county of his or her personal residence attendance at which prevents his or her attendance at the polls.”'
(Emphasis added.) This statute merely provides that a student may vote by absentee ballot in the county in which he or she resided’before leaving to attend school. This would be ' appropriate for students who intend to return to their hometowns after school-and who wish to maintain their domiciles at their previous residences while they are attending school. Additionally, this provision is consistent with § 17-3-32, Ala.Code 1975, which provides, in pertinent part, that “[n]o person shall lose or acquire a domicile ... by temporary *969 absence from his or her domicile without the intention of remaining.” •
Also, nothing in these statutes suggests that a student who has left home to attend school must vote by absentee ballot or that the student cannot register to vote in the county where he or she attends school. Further, the statutes do not suggest that students must maintain their previous domicile based on the fact that they do not have definite plans after they graduate. Rather, these statutes merely allow a student who wishes to maintain his or her domicile at his or her parents’ residence to do so. These statutes do not create a presumption that a student’s domicile automatically remains at the parents’ residence. This seems specifically clear when reading these statutes in conjunction with § 17-3-11, Ala.Code 1975.
Section 17-3-ll(a) provides:
“The board of registrars in each county shall visit each college or university, whether public or private, having an enrollment of 500 or more, which -is located therein, at least once during the school year for the purpose of registering voters, and shall remain there for one full working day, weekends and holidays excepted. They shall give at least 12 days’ notice of the time and place where they will attend to register applicants for registration, by bills posted at. three or more public places and by advertisement once a week for three consecutive weeks in a campus newspaper, if there is one published on the.campus. Each college or university receiving state funds that is affected by the provisions of this section shall provide space and accommodations for the board of registrars on their campus.”
(Emphasis added.) It is true that this statute does not actually speak to domicile. Further, I agree with the main opinion that the trial court was incorrect in' finding that § 17-3-11 creates a presumption that a student is automatically domiciled in the city in which he or she attends school. However, I believe that, when this statute is read in conjunction with § 17-11-3, Ala. Code 1975, it sheds light on the legislature’s intent regarding voting by students who leave their parents’ homes to attend school. I read these statutes, together, as providing an avenue-by which any student who wishes tó retain his or her former domicile while attending school may do so, but, if a student intends to change his or her domicile to the place .where he or she attends school, the student has a right to register to vote in that county. In both situations, it is the student’s intent regarding domicile that should be the controlling factor.
Additionally, § 17-3-52, Ala.Code 1975,[22] provides, in pertinent part:
“The board of registrars shall have power to examine, under oath or affirmation, all applicants for registration, and to take testimony touching the qualifications of such applicants, but no applicant shall be required to answer any question, written or oral, not related to his or her qualifieatiohs to register. In order to aid the registrars to judicially determine if applicants to register have the qualifications to register to vote, each applicant shall be furnished by the board a written application, which shall be uniform in all cases with no discrimi *970 nation as between applicants, the form and contents of which application shall be promulgated by rule by the Secretary of State of the State of Alabama. The application shall be so worded that there will be placed before the registrars information necessary or proper to aid them to pass upon the qualifications of each applicant.”[23]
The approved voter-registration forms[24] provide, in pertinent part:
“To register to vote in the State of Alabama, you must:
“• Be a citizen of the United States.
“• Reside in Alabama.
“• Be at least 18 years old on or before election day.
“• Have pot been convicted of a disqualifying felony, or if you have been convicted, you must have had your civil rights restored.
“• Not have been declared ‘mentally incompetent’ by a court.”
The form then asks for the following information:
1) “Address where you live: (Do not use post office box)”;
2) “Address where you receive your mail
3) “Address where you were last registered to vote (Do not use post office box).”
Finally the form includes the following voter declaration: .
“• I am a U.S. citizen
“• I live in the State of Alabama
“• I will be at least 18 years old on or before election day
“• I am not barred from voting by reasons of a disqualifying felony conviction
“• I have not been judged ‘mentally incompetent’ in a court of law”
The form specifically asks where the applicant lives and requires the applicant to verify that he or she lives in Alabama. It also asks for the previous address at which the applicant had last registered to vote but does not attempt to elicit any information regarding whether the applicant had any intent to abandon his or her previous domicile and does not elicit any information regarding whether the applicant has any intent to remain at the new address permanently or indefinitely. However, this form is supposed to provide a registrar with all the information necessary to aid in passing upon an applicant’s qualifications.
The main opinion holds that a student cannot vote in the place where he or she is living and attending school unless the student has formed definite plans to remain in that place after completing his or her education. This holding seems inconsistent with the fact that the voter-registration forms merely ask for information regarding where the applicant lives, coupled with a statute that requires registrars to visit local campuses having an enrollment of 500 or more, for the sole purpose of registering students to vote. Under the holding of the main opinion, it appears that these forms and the registrars’ presence on campus would lead students astray and actually encourage the students' to register to vote in places where they are not qualified to vote based on their presumed domicile.
*971 Further, the definition in the mam opinion of domicile for a student would also impose additional fact-finding measures upon the registrars who are required to register students on college campuses. Because students would' be presumed to maintain their previous domicile in their hometowns absent an intent to remain in the city in which they are attending school after graduation and some affirmative actions to establish that intent, registrars would be required to go beyond the written applications and to question each student applicant as to: (1) his or her previous domicile, regardless of whether he or she had previously registered elsewhere; (2) his or her definite plans for the future; and (3) whether he or she had undertaken any affirmative actions to establish a new domicile in the place in which he or she attends school. This seems inconsistent with the legislature’s stated intent that applicants will be provided with uniform, written applications that will aid registrars in determining whether an applicant is qualified to vote and its intent that the application will provide registrars with the information they need to determine a voter’s qualifications.
When reading all of these statutes in conjunction with one another, it appears that the legislature intended to give students the option of maintaining their domicile in their hometown and voting by absentee ballot or registering to vote where they attend school. It also appears that § 17-3-11 was an attempt to facilitate students’ ability to vote where they, attend school by having registrars come to school campuses and register any interested students to vote. However, the main opinion in this case would have the opposite effect. It appears that it would prevent many, if not most, students from voting in the cities in which they live and attend school. Rather, it would force students to comply with a more burdensome absentee-ballot process. I believe that such a holding places undue obstacles in the path of students who wish to vote. Additionally, I believe that the decision could potentially discourage students from any political involvement in the city in which they live, spend money, and have developed significant ties during their time as students. Therefore, I must respectfully dissent from the holding of main opinion that a student cannot be domiciled in the city in which he or she attends school unless that student has indicated that he or she has definite plans to remain there after he or she graduates and has taken affirmative steps, other than registering to vote, to demonstrate that he or she intends to make that place his or her domicile.
STUART, J., concurs.

. I note that two of the cases relied on in the main opinion — Ex parte Weissinger, 247 Ala. 113, 22 So.2d 510 (1945), and Ex parte Coley, 942 So.2d 349 (Ala.2006) — also involved a determination of domicile., for purposes of venue in civil litigation rather than a determination of domicile for voting purposes. Some of the general principles in those cases might be relevant to determining a person’s domi-die for voting purposes. However, I believe that a determination of domicile for purposes of deciding whether a person is even qualified to register to vote'in a county raises considerations vastly different from a determination of whether a party in a civil action has established his or her domicile for purposes establishing proper venue for the action.

. When discussing the 108 students in Part I, the main opinion indicates that all of those voters listed an address outside Tuscaloosa as the address to which ihe University sends their' grades. It is true that many students indicated that their grades were sent to their parents’ addresses. However, there were also many students who indicated that their grades were sent to an e-mail address or were obtained online and who did not provide any mailing address, much less an address outside Tuscaloosa, to which grades were sent. Other students did not provide any information regarding where their grades were sent. Additionally, one student indicated that her grades were sent only to her Tuscaloosa address. Two other students indicated that their, grades were sent both to an address outside Tuscaloosa and to those students' addresses in Tuscaloosa. Therefore, the assertion that all the voters listed an address outside Tuscaloosa to which their grades were to be sent is not accurate.

. In fact, one student stated in his affidavit that his grades were sent to his parents' address "cause my parents pay for my education.”

. The 2014 Cumulative Supplement pocket part to the Alabama Code contains only what appear to be updated voter-registration forms, which previously were appended to the statute by a Code Commissioner’s note. There is no text and no description of how these forms became part of the. Code. I assume it was not the intention of the Code Commissioner to delete the text.

. Prior to January 1, 2007, this statute provided that the form would be prescribed by this Court and that this Court would file the form with the Secretary of State.

. The Code Commissioner’s Notes to § 17-3-52 indicate that the original two voter-registration forms had been approved by this Court on October 22, 1999. As to the language quoted, the new forms are substantially the same as the original forms.